MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE
Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On February 14, 2019, the report of the Magistrate Judge (Dkt. #77) was entered containing proposed findings of fact and recommendations that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand be granted. Having received the report of the Magistrate Judge, having considered Plaintiff's Objections (Dkt. #89), Defendant's Response (Dkt. #91), and having conducted a de novo review, the Court is of the opinion that the Magistrate Judge's report should be adopted.
*775 RELEVANT BACKGROUND
The underlying facts of this case have been set forth previously; as such, the Court sets forth only those facts pertinent to Plaintiff's Objections.
Plaintiff purchased the real property located at 4008 Saharah Court, Carrollton, Texas 75010 (the "Property") in April 2004, at which time, the value of the Property was purportedly $ 700,000.00. Plaintiff obtained a home equity loan for $ 400,000.00 in mid-2005, and obtained a second home equity loan for $ 1,000,000.00 on December 21, 2006 (the "Loan") (Dkts. #43 at p. 9; #50-1). According to Plaintiff, Citibank fraudulently obtained the appraisal that enabled the Loan to be made, and specifically asserts that "Citibank wanted to loan $ 1,000,000.00 against the [Property]. To support that loan amount, Citibank needed to have the [Property] appraised at a fair-market value of $ 1,250,000 or more (being... above the [Property's] actual fair market value)" (Dkt. #43 at p. 6). The Loan was secured by Plaintiff's execution of a "Texas Home Equity Security Instrument" (the "Security Instrument") in favor of lender Washington Mutual Bank[1] (Dkt. #50-1). Under the Security Instrument, Plaintiff was also required to execute a sworn Texas Home Equity Affidavit and Agreement regarding the Property's fair market value ("Affidavit") (Dkt. #50-2), wherein Plaintiff attested that "[t]he extension of Credit is of a principal amount that... does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made" (Dkt. #50-2).
Plaintiff filed bankruptcy on November 14, 2007, and was discharged on February 22, 2008 (Dkt. #50-3). After the discharge, Plaintiff alleges that he submitted multiple loan modification applications to Defendant between 2008 and 2018 and that Defendant agreed in writing to modify the Loan (Dkt. #43 at pp. 12-15). It is undisputed that Plaintiff has failed to make his monthly mortgage payments and is currently in default under the terms of the Loan.
On June 24, 2013, Defendant filed an application to foreclose Plaintiff's Loan under Texas Rule of Civil Procedure 736 (the "Foreclosure Action"). In re Order for Foreclosure Concerning 4008 Saharah Court, Carrollton, Texas 75010 , No. 2013-70828-431 in the 431st Judicial District Court for Denton County, Texas. Plaintiff, represented by the same counsel, brought suit against Defendant on November 6, 2013, in the 431st Judicial District Court of Denton County, seeking to contest Defendant's right to foreclose, quiet title to the Property, and raise claims for declaratory relief, breach of contract, permanent injunctive relief, and damages; on November 27, 2013, the case was removed to the Eastern District of Texas ("First Lawsuit"). Sivertson v. Citibank N.A., as Trustee for WAMU Asset-Backed Certificates, WAMU Series Number 2007-HE2 , Cause No. 4:13-cv-710 (ECF #1). As a result, the Foreclosure Action was stayed. As the Report pointed out, Plaintiff's complaint in the First Lawsuit is virtually identical to his live complaint in the instant second lawsuit. "In both suits, Plaintiff alleges that: (1) he submitted a significant number of loan modification packages which Defendant accepted but then refused to modify the Loan; and (2) 'Defendant violated the Texas constitution by making a home equity loan to [Plaintiff] which exceeded 80% of the fair market value of the [Property]' " (Dkt. #77 at pp. 3-4) (quoting Cause No. 4:13-cv-710 (ECF #20)). The Court granted Defendant's Motion to Dismiss Second Amended Complaint and dismissed Plaintiff's First Lawsuit on March 31, *776 2015. Cause No. 4:13-cv-710 (ECF #36, #37).
Some three years later, Plaintiff brought the instant suit on January 19, 2018, against Defendant in the 16th Judicial District Court, Denton County, Texas, Cause No. 18-0574-16 (Dkt. #3). The case was subsequently removed to the Eastern District of Texas (Dkt. #1). Plaintiff filed his Amended Complaint subsequent to removal (Dkt. #9); Defendant thereafter filed a motion to dismiss Plaintiff's claims (Dkt. #14). Plaintiff then filed a further amended complaint, his Second Amended Complaint (Dkt. #23), which Defendant again moved to dismiss (Dkt. #27). Plaintiff moved to file his Third Amended Complaint, thereby mooting the pending dismissal motion (Dkt. #33). On August 3, 2018, Plaintiff filed his Fourth Amended Complaint, the live pleading (Dkt. #43).
By and through his Fourth Amended Complaint, Plaintiff seeks actual and exemplary damages, as well as his attorney's fees and costs, and raises claims for: (1) quiet title; (2) declaratory relief; (3) breach of contract; (4) promissory estoppel; (5) common law fraud; (6) negligent misrepresentation; (7) negligence; (8) gross negligence; (9) a contest of the right to foreclose; and (10) permanent injunctive relief (Dkt. #43). Plaintiff also alleges spoliation and various tolling doctrines (Dkt. #43 at p. 40).
On August 24, 2018, Defendant filed its Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand, seeking dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #50). After receiving several extensions of time (Dkts. #54; #56), Plaintiff responded to the Motion to Dismiss on October 6, 2018 (Dkt. #58). On October 12, 2018, Defendant filed a Reply (Dkt. #59). On October 19, 2018, Plaintiff filed his Sur-Reply (Dkt. #60). The Magistrate Judge entered a Report and Recommendation on February 14, 2019, recommending that Defendant's Motion to Dismiss be granted, and Plaintiff's claims be dismissed (Dkt. #77). On February 21, 2019, the Court granted Plaintiff an extension of time to file objections to March 7, 2019 (Dkt. #81), and on March 8, 2019, the Court again extended Plaintiff's deadline to object to March 14, 2019 (Dkt. #86). On March 15, 2019, without explanation for his untimeliness even after numerous extensions, Plaintiff filed his Objections to the Report and Recommendation (Dkt. #89). On March 18, 2019, Defendant filed a Response (Dkt. #91).
OBJECTIONS TO REPORT AND RECOMMENDATION
A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C) ; Fed. R. Civ. P. 72(b)(2)-(3).
As an initial matter, the Court notes that even after two extensions of his deadline to object to the Report, Plaintiff still failed to file his Objections on time. As a result, the Court is not bound to consider his arguments; Plaintiff is not entitled to a de novo review. Madenwald v. JPMorgan Chase Bank, N.A. , 4:13-CV-136, 2014 WL 12576776, at *1 (E.D. Tex. July 18, 2014) ("The objections were filed late and will not be considered by the court."); Chao v. Dars of Texas , 4:15CV169, 2015 WL 6522818, at *1 (E.D. Tex. Oct. 27, 2015) ("Because the objections were received after [the deadline to object], Plaintiff is barred from de novo review by the Court."); Penley v. Sandoval , CIV.A. 4:04CV24, 2005 WL 3970822, at *2 (E.D. Tex. Mar. 8, 2005), aff'd sub nom.
*777 Penley v. Collin County, Tex. , 446 F.3d 572 (5th Cir. 2006) ("plaintiff's objections were untimely. Thus, plaintiff is not entitled to de novo review of the objections in relation to the pleadings and the applicable law.") (citing Douglass v. United Services Automobile Association , 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1) ; and Fed. R. Civ. P. 72(b) ). Furthermore, Plaintiff's 19-page Objection is well over the page limit of 8 pages set forth in Local Rule CV-72(c). Notwithstanding this fact, the Court has considered Plaintiff's arguments and find the same to be without merit, as discussed infra.
The Report found that Plaintiff's claims should be dismissed under Rule 12(b)(6) because: (1) each of Plaintiff's claims, except for his claim to quiet title,[2] are barred by the applicable statute of limitations; and (2) "[e]ven assuming that Plaintiff's aforementioned claims were not time-barred, such claims must nonetheless be dismissed under Rule 12(b)(6) for failure to state a claim" (Dkt. #77 at p. 11). Plaintiff clarifies in his Objections that "[t]o simplify this case, [Plaintiff] limits the Objections to the Findings and Recommendations relating to [Plaintiff's] Suit to Quiet Title, Contest of the Foreclosure, Declaratory Relief, and Claim for Injunctive Relief" (Dkt. #89 at p. 5). Accordingly, the Court adopts the Report's recommendations as to Plaintiff's claims for breach of contract, promissory estoppel, common law fraud, negligent misrepresentation, negligence, and gross negligence, finding that such claims should be dismissed with prejudice pursuant to Rule 12(b)(6). Furthermore, the Court finds that Plaintiff's claims are not precluded from dismissal by virtue of his assertion of any tolling doctrines or the "spoliation inference rule."
As to the Report's findings regarding Plaintiff's remaining claims (i.e., quiet title, contest of the foreclosure, declaratory relief, and injunctive relief), Plaintiff primarily objects: (1) the Report's findings as to these claims violate the Erie doctrine; and (2) the Report improperly relied upon extrinsic evidence (Dkt. #89 at p. 6). The Court considers each objection in turn.
Violation of the Erie Doctrine
Plaintiff "objects to each of the Findings and Recommendations relating to Sivertson's Suit to Quiet Title, Contest of the Foreclosure, Declaratory Relief, and Claim for Injunctive Relief because they violate the Erie doctrine" (Dkt. #89 at p. 7). Specifically, Plaintiff contends that:
In 2014, the Dallas Court of Appeals adjudicated a nearly identical case where the lender unconstitutionally overburdened the homestead; the Dallas Court of Appeals: (1) held that the purported lien was constitutionally invalid and could not be foreclosed; and (2) granted the homeowner an award of attorney's fees; this is the loadstar [sic], controlling case (directly on point). Under the Erie doctrine, this Court must enforce [Plaintiff's] Constitutional rights in the same manner as the Dallas Court of Appeals.
(Dkt. #89 at pp. 7-8) (emphasis omitted) (citing Wells Fargo Bank, N.A. v. Leath , 425 S.W.3d 525, 528 (Tex. App.-Dallas 2014, pet. denied) ), opinion supplemented on overruling of reh'g (Mar. 21, 2014). First, the Court notes that Plaintiff wholly fails to explain why or how the Court has violated the Erie doctrine in light of the Leath opinion, failing to draw any comparisons *778 between the instant case and the circumstances present before the Leath court, other than blanketly stating that such a case is "directly on point."
In Leath , the state appellate court determined whether there was legally and factually sufficient evidence to support a jury's finding regarding the fair market value of the property at issue (amongst other findings irrelevant to the instant analysis). Wells Fargo Bank, N.A. v. Leath , 425 S.W.3d 525 (Tex. App.-Dallas 2014, pet. denied), opinion supplemented on overruling of reh'g (Mar. 21, 2014). Specifically, the Leath court found that considering the expert testimony and the plaintiff's testimony presented in the trial proceedings, the jury verdict related to the value of the property was supported by more than a scintilla of evidence and further, by factually sufficient evidence. See ids="6953565" index="10" url="https://cite.case.law/sw3d/425/525/#p528">id. at 534-36.
The Leath case is inapposite to the instant case: the Leath court determined issues at a completely different stage of proceedings, using wholly different state law standards to make such determinations. See Croucher v. Croucher , 660 S.W.2d 55, 58 (Tex. 1983) ; BMC Software Belg., N.V. v. Marchand , 83 S.W.3d 789, 795 (Tex. 2002). Indeed, as Defendant argues, "[b]ecause Plaintiff faces a pleading challenge, [ Leath , 425 S.W.3d 525 ] does not offer Plaintiff the support he claims it does. In Leath , Wells Fargo challenged the sufficiency of the evidence of a jury's finding regarding the value of the property. The question before this Court is whether Plaintiff sufficiently pleaded a quiet title claim" (Dkt. #91 at p. 2). Furthermore, the circumstances before the state appellate court did not involve a sworn affidavit from the plaintiff attesting his understanding of the value of the property; in fact, the plaintiff testified that he believed the value of the property was contingent on certain repairs being completed and that he never saw the appraisal of the home prior to signing the closing documents. Leath , 425 S.W.3d at 536. In the instant case, Plaintiff signed an affidavit attesting to the fair market value of the Property, and further swearing that such value and the amount of the Loan did not violate the Texas Constitution. The Report did not run afoul of the Erie doctrine in not applying the Leath findings to the instant case. The Leath case is substantively distinguishable and has no bearing on the sufficiency of Plaintiff's pleadings herein. Plaintiff's objection is overruled.
Improper Consideration of Extrinsic Evidence
Plaintiff next objects that the Court improperly considered extrinsic evidence, specifically the Affidavit, in deciding whether his quiet title claim and contest to the foreclosure claim should be dismissed for failure to state a claim under Rule 12(b)(6) (Dkt. #89 at p. 9). Plaintiff objects:
Pleading that [Defendant] cannot foreclose a lien does not plead the security agreement and related affidavit as integral and central to [Plaintiff's] claims. If the security agreement and affidavit did not exist, then [Plaintiff] would still have a proper claim that [Defendant] could not foreclose his homestead for default of the home-equity loan. Similarly, pleading "The pendency of [Plaintiff's] prior bankruptcy may further entitle [Plaintiff] to relief under certain tolling, deferral, or extension precepts" does not make [Plaintiff's] bankruptcy schedules integral and central to [Plaintiff's] claims that [Defendant's] lien is constitutionally invalid and unenforceable.
(Dkt. #89 at p. 9). Plaintiff continues that because "[Plaintiff] does not refer to the extrinsic documents in the Complaint; and (ii) the extrinsic documents are not integral *779 and central to [Plaintiff's] claims, as stated by [Plaintiff] in the Complaint," the Court could not consider the extrinsic documents in analyzing the Motion to Dismiss, and instead, should have "treat[ed] the dismissal proceeding as [a] summary-judgment proceeding" (Dkt. #89 at p. 10, 11).
As an initial matter, the Report found that Plaintiff's quiet title claim and claim to contest foreclosure[3] were insufficiently pleaded because Plaintiff's Fourth Amended Complaint "does not reference how the type of interest Plaintiff has in the property is superior to that of Defendant. Instead of providing that he is current on his mortgage payments, Plaintiff solely relies on the alleged weakness of Defendant's title to prevail on his claim" (Dkt. #77 at p. 19). Plaintiff argues in his Objections that he "purchased a fee-simple interest in the [Property] in 2004," and "has been in continuous possession of the [Property], as his primary residence, since that time," and further, "[h]is ownership rights predate and remain superior to [Defendant's] rights" (Dkt. #89 at p. 20).[4]
The majority of these allegations are not contained in Plaintiff's live pleading, and therefore, are not properly before the Court. In addition, such allegations fail to demonstrate Plaintiff's interest in the Property is superior to Defendant's interest. Reese v. Wells Fargo Bank, N.A. , 3:17-CV-2174-G, 2017 WL 5992406, at *5 (N.D. Tex. Dec. 4, 2017) ; Hudson v. Texas W. Mortgage, LLC , 4:15-CV-1593, 2017 WL 928134, at *4 (S.D. Tex. Mar. 9, 2017) (citing Campo v. Bank of Am., N.A. , No. CV H-15-1091, 2016 WL 1162199, at *5 (S.D. Tex. Mar. 24, 2016) ); Lopez v. Sovereign Bank, N.A. , Civ. A. No. H-13-1429, 2014 WL 1315834 *5 (S.D. Tex. March 31, 2014). For this reason alone, Plaintiff's quiet title claim fails.
Even so, to Plaintiff's maintain that the Report incorrectly relied on extrinsic evidence in recommending dismissal of his quiet title claim. The Report found that:
Plaintiff alleges that the bankruptcy schedules, the Security Instrument, and accompanying Affidavit are "irrelevant to the dismissal inquiry" and because he does not refer to these documents and because they are not integral or central to Plaintiff's claims they cannot be considered by the Court at the dismissal stage....Plaintiff's home equity documents, including specifically the Security Instrument and Affidavit, bankruptcy schedules, and prior lawsuit may be properly considered by the Court. They are matters of public record and/or are referenced in Plaintiff's Complaint. Contrary to Plaintiff's assertions, his Plaintiff's Amended Complaint expressly references his bankruptcy as well as the Security Instrument, which in turn refers to the Affidavit. These records - including most importantly to this case, the Affidavit - may be properly considered by the Court without turning Defendant's Motion to Dismiss into a Motion for Summary Judgment.
(Dkt. #77 at pp. 19-21). Indeed, as the Report found, the Court may consider offensive *780 extrinsic evidence without converting the Motion to Dismiss into a Motion for Summary Judgment. In taking up Defendant's Motion to Dismiss, the Court is permitted to review the live pleading, any documents attached to the live pleading, and any documents attached to the Motion to Dismiss that are central to the claim and referenced by the live pleading. See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC , 594 F.3d 383, 387 (5th Cir. 2010). Moreover, the Court may take judicial notice of an "adjudicative fact," including other court cases. Fed. R. Evid. 201 ; Thomas v. Beaumont Indep. Sch. Dist. , No. 1:15-CV-112, 2016 WL 922182, at *3 (E.D. Tex. Feb. 12, 2016) (court could consider filings in plaintiff's state court case in analyzing the motion to dismiss as a matter of public record), report and recommendation adopted , No. 1:15-CV-112, 2016 WL 899870 (E.D. Tex. Mar. 8, 2016). Upon independent review, the Court finds that the Fourth Amended Complaint directly references the Security Instrument, which in turn refers to the Affidavit, and Plaintiff's bankruptcy proceedings (Dkt. #43 at pp. 10-11). The Affidavit is central to Plaintiff's claims. It is also a public record. Importantly, Plaintiff's conclusory objection fails to offer argument or authority to the contrary. As a result, the Report did not err in considering such extrinsic evidence, namely the Affidavit, in taking up the Motion to Dismiss. See Summers v. PennyMac Corp. , 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (granting the motion to dismiss, after finding that "[because] the Note, Security Instrument, and Home Equity Affidavit were all part of the loan application process and necessary for approval of Plaintiffs' loan, the court believes that the Home Equity Affidavit executed by Plaintiffs falls within the scope of pleadings as described by the Fifth Circuit in Collins and therefore considers the document in deciding [defendant's] motion to dismiss."); Reese v. Wells Fargo Bank, N.A. , No. 3:17-CV-2174-G, 2017 WL 5992406, at *2. Because the extrinsic evidence was properly considered, there was no need to convert the motion to dismiss into a motion for summary judgment. The Report properly considered and rejected this argument. Plaintiff's objections regarding extrinsic evidence and conversion of the motion are overruled.
Other Objections
As a final matter, Plaintiff raises numerous factual allegations and/or legal arguments not previously raised before the Magistrate Judge. "New claims and issues may not, however, be raised for the first time in objections to a Report and Recommendation." Andrews v. United States , 4:10-CR-152(05), 2019 WL 913873, at *1 (E.D. Tex. Feb. 22, 2019) (citing United States v. Armstrong , 951 F.2d 626, 630 (5th Cir. 1992) ); Paup v. Texas , 6:16-CV-417-RWS-KNM, 2017 WL 1129906, at *5 (E.D. Tex. Mar. 27, 2017). Plaintiff's remaining objections are overruled.
CONCLUSION
Having considered Plaintiff's Objections (Dkt. #89), Defendant's Response (Dkt. #91), and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #77) as the findings and conclusions of the Court.
It is therefore ORDERED that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand is GRANTED . Plaintiff's claims are hereby DISMISSED WITH PREJUDICE .
IT IS SO ORDERED .
REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
Christine A. Nowak, UNITED STATES MAGISTRATE JUDGE
Pending before the Court is Defendant Citibank, N.A., as Trustee, in Trust for *781 Registered holders of WAMU Asset-Backed Certificates WAMU Series Number 2007-HE2's ("Defendant") "Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand" ("Motion to Dismiss") [Dkt. 50]. After considering the Motion to Dismiss, Plaintiff Paul R. Sivertson's ("Plaintiff") Response [Dkt. 58], Defendant's Reply [Dkt.59], Plaintiff's Sur-Reply [Dkt. 60] and all other relevant filings, the Court recommends that Defendant's Motion to Dismiss [Dkt. 50] be GRANTED as set forth herein.
BACKGROUND
On January 19, 2018, Plaintiff Paul R. Sivertson ("Plaintiff"), filed the instant suit in the 16th Judicial District Court for Denton County, seeking to void the lien on the real property located at 4008 Saharah Court, Carrollton, Texas 75010 (the "Property") and recover damages from Defendant [Dkt. 1-4]. This is Plaintiff's second lawsuit against Defendant related to the Property.
Plaintiff's Home Equity Loan
In April of 2004, Plaintiff purchased the Property, which he maintains as his homestead [Dkt. 43 at 9]. At time of purchase, the value of the home is alleged to have been $ 700,000.00. In mid-2005, Plaintiff obtained the first of two home equity loans on the Property. The first loan was in the amount of $ 400,000.00 [Dkt. 43 at 9]. On December 21, 2006, Plaintiff obtained a second home equity loan in the amount of $ 1,000,000.00 [Dkts. 43 at 9; 50-1] (the "Loan"). Plaintiff alleges that Citibank fraudulently procured the appraisal which enabled the second Loan to be made. He claims "Citibank wanted to loan $ 1,000,000.00 against the [Property]. To support that loan amount, Citibank needed to have the [Property] appraised at a fair-market value of $ 1,250,000 or more (being... above the [Property's] actual fair market value)" [Dkt. 43 at 6].
Plaintiff secured the second Loan by executing a "Texas Home Equity Security Instrument" (the "Security Instrument") in favor of lender Washington Mutual Bank [Dkt. 50-1]. In connection with the Loan, Plaintiff was required under the Security Instrument to execute a sworn Texas Home Equity Affidavit and Agreement as to the fair market value of the Property ("Affidavit") [Dkt. 50-2]. Specifically, Plaintiff swore "[t]he extension of Credit is of a principal amount that... does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made" [Dkt. 50-2]. Thereafter, Washington Mutual Bank sold the Loan to Defendant [Dkt. 43 at 11].
On November 14, 2007 Plaintiff filed for Chapter 7 bankruptcy in the United States Bankruptcy Court, Eastern District of Texas, Cause No. 07-42672 [Dkt. 50-3]. On February 22, 2008, Plaintiff was discharged from his bankruptcy case [Dkt. 50-3]. Following his discharge, Plaintiff alleges that between 2008 and 2018, he submitted multiple loan modification applications to Defendant and that Defendant agreed in writing to modify his Loan [Dkt. 43 at 12-15].[1] Plaintiff does not dispute in any of his filings that he is currently in default under the terms of the Loan for failure to make his monthly payments. Given Plaintiff's default, on June 24, 2013, Defendant filed an application to foreclose Plaintiff's Loan under Texas Rule of Civil Procedure 736 (the "Foreclosure Action"). In re *782 Order for Foreclosure Concerning 4008 Saharah Court, Carrollton, Texas 75010 , No. 2013-70828-431 in the 431st Judicial District Court for Denton County, Texas.
The First Lawsuit
On November 6, 2013, Plaintiff brought suit against Defendant in the 431st Judicial District Court of Denton County, which was subsequently removed to the Eastern District of Texas on November 27, 2013, Cause No. 4:13-cv-710 ("First Lawsuit"). Sivertson v. Citibank N.A., as Trustee for WAMU Asset-Backed Certificates, WAMU Series Number 2007-HE2 , 4:13-cv-710 (ECF #1) (Notice of Removal). Plaintiff's First Lawsuit stayed the Foreclosure Action.
Plaintiff's First Lawsuit, filed by the same counsel representing him in the instant suit, asserted claims contesting Defendant's right to foreclose, to quiet title to the Property, for declaratory relief, breach of contract, permanent injunctive relief, and damages. Relevant to the Court's analysis herein, Plaintiff's complaint in the First Lawsuit is virtually identical to his live complaint in the Second Lawsuit. In both suits, Plaintiff alleges that: (1) he submitted a significant number of loan modification packages which Defendant accepted but then refused to modify the Loan; and (2) "Defendant violated the Texas constitution by making a home equity loan to [Plaintiff] which exceeded 80% of the fair market value of the [Property]" 4:13-cv-710 (ECF #20). Notably, in the First Lawsuit, Plaintiff did not allege the applicability of any tolling or other equitable doctrines. Defendant moved to dismiss each of Plaintiff's claims, arguing that: (1) any claim that Plaintiff's Home Equity Loan violates the Texas Constitution is barred by limitations; (2) Defendant has a right to foreclose; (3) Plaintiff failed to plead a claim to quiet title, including specifically that Plaintiff failed to plead any facts plausibly supporting his theory that Defendant is in default of an enforceable modification agreement; (4) Plaintiff cannot maintain a claim for breach of contract because Plaintiff is owed no duty of good faith; and (5) Plaintiff is not entitled to declaratory or injunctive relief. 4:13-cv-710 (ECF # 22). On March 31, 2015, the Court dismissed Plaintiff's First Lawsuit, granting Defendant's Motion to Dismiss Second Amended Complaint in it is entirety. 4:13-cv-710 (ECF #36, #37).
The Instant (Second) Lawsuit
On January 19, 2018, Plaintiff brought the instant lawsuit against Defendant in the 16th Judicial District Court, Denton County, Texas, Cause No. 18-0574-16 [Dkt. 3]. On March 12, 2018, the case was removed to the Eastern District of Texas [Dkt. 1]. Plaintiff filed his original complaint in state court [Dkt. 3]; upon removal Plaintiff filed his Amended Complaint [Dkt. 9]. Defendant subsequently moved to dismiss Plaintiff's claims [Dkt. 14], in response, Plaintiff sought to file a further amended complaint - his Second Amended Complaint [Dkt. 23]. Defendant again moved to dismiss Plaintiff's Second Amended Complaint [Dkt. 27], and again Plaintiff moved to file his Third Amended Complaint, mooting the pending dismissal motion [Dkt. 33]. Plaintiff's live pleading is his Fourth Amended Complaint filed on August 3, 2018 [Dkt. 43]. Plaintiff has had numerous opportunities to amend his complaint, after reviewing Defendant's arguments for dismissal.
Plaintiff's Fourth Amended Complaint asserts claims for: (1) quiet title; (2) declaratory relief; (3) breach of contract; (4) promissory estoppel; (5) common law fraud; (6) negligent misrepresentation; (7) negligence; (8) gross negligence; (9) a contest of the right to foreclose; and (10) permanent injunctive relief [Dkt. 43]. Plaintiff also alleges spoliation, the application of various tolling/equitable doctrines, *783 and seeks actual and exemplary damages, as well as his attorney's fees and costs [Dkt. 43 at 40].
Defendant filed the instant Motion to Dismiss on August 24, 2018, seeking dismissal of all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. 50]. After being granted an extension of time, Plaintiff filed his Response on October 6, 2018 [Dkt. 58]. Defendant filed its Reply on October 12, 2018 [Dkt. 59], and Plaintiff filed his Sur-Reply on October 19, 2018 [Dkt. 60]. Accordingly, Defendant's Motion to Dismiss is ripe for consideration.
LEGAL STANDARD
Defendant moves to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim. A 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. It follows, that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged- but it has not 'shown'-'that the pleader is entitled to relief.' " Id. (quoting Fed. R. Civ. P. 8(a)(2) ).
In Iqbal , the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." Iqbal , 556 U.S. at 681, 129 S.Ct. 1937. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." Id. "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." Morgan v. Hubert , 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal , 556 U.S. at 679, 129 S.Ct. 1937. The Court must accept as true all well-pleaded facts contained in Plaintiff's amended complaint and view them in the light most favorable to Plaintiff. Baker v. Putnal , 75 F.3d 190, 196 (5th Cir. 1996).
ANALYSIS
Defendant asserts that Plaintiff's claims are each subject to dismissal. Defendant argues Plaintiff's claims fail because: (1) each of Plaintiff's claims, other than quiet title, are time-barred; (2) Plaintiff lacks standing to bring his loan origination based-claims; (3) Plaintiff's claims are barred by judicial estoppel; (4) Plaintiff's quiet title claim is contradicted by his sworn Affidavit and is thus barred; (5) Plaintiff's fraud and negligence-based claims are barred by the economic loss rule; (6) Plaintiff's fraud and negligence-based claims are insufficiently pleaded; (7)
*784 Plaintiff's breach of contract and promissory estoppel claims are barred by the statute of frauds; (8) Plaintiff's breach of contract claim is insufficiently pleaded; and (9) Plaintiff's request for declaratory relief fails because Plaintiff fails to state a plausible underlying claim for relief [Dkt. 50 at 2-4].
Statute of Limitations
Defendant begins by asserting that each of Plaintiff's claims, except for his claim to quiet title, are barred by the applicable statute of limitations because any alleged wrongdoing took place over four years ago [Dkt. 50 at 8-9]. Under Texas law, a four-year statute of limitations applies to breach of contract and promissory estoppel claims. See Tex. Civ. Prac. & Rem. Code §§ 16.004, 16.051. Similarly, the statute of limitations for a common law fraud claim is four years. See Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) ; Pretz v. Hartford Life Insurance Co. , Civil Action No. 1-14-CV-92, 2014 WL 12618072, at *2 (E.D. Tex. Dec. 11, 2014) (citing Williams v. Khalaf , 802 S.W.2d 651, 658 (Tex. 1990). The applicable limitations for negligent misrepresentation, negligence, and gross negligence is two years. HECI Exploration Co. v. Neel , 982 S.W.2d 881, 885 (Tex.1998) ; Tex. Civ. Prac. & Rem. Code § 16.003(a) ; F.D.I.C. v. Henderson , 849 F. Supp. 495, 497 (E.D. Tex. 1994) (indicating that gross negligence is also governed by Texas's two-year statute of limitations).
Plaintiff filed the instant suit on January 19, 2018, which notably falls more than seven (7) years after Plaintiff's latest specific assertion in his Fourth Amended Complaint of Defendant's wrongful conduct, June of 2010, and more than four (4) years after the filing of his First Lawsuit against Defendant [Dkt.43 at 15]. Thus (given that Plaintiff filed the Second Lawsuit on January 18, 2018), Plaintiff's claims must have accrued on or after either January 19, 2016 (two-year limitations) or January 19, 2014 (four-year limitations). Stated differently, June 2010 is the latest date associated with any specific allegations of wrongdoing by Defendant. Because this date falls in excess of four years ago, Plaintiff's claims are time-barred, save for the potential applicability of tolling, as each date falls outside even the longest statute of limitations of four years.
Plaintiff argues that limitations do not bar his claims here because limitations are tolled pending "the proper subject[ ] of discovery" and/or "cannot be adjudicated in an early-stage dismissal proceeding" [Dkt. 58 at 27-28].[2] Specifically, Plaintiff's live Complaint states the following with respect to tolling "[b]ecause of [Defendant's] misconduct and the facts and circumstances of this case, in response to any limitations, laches, or any other time-bar defenses, [Plaintiff] is entitled to any tolling, deferral, or extension precepts (such as the fraudulent concealment doctrine and the discovery rule)" [Dkt. 43 at 13]. Continuing on, Plaintiff states "this pattern and practice is consistent with the conduct of [Defendant]" and "[Plaintiff could not have known the truth about [Defendant's] intentions at the time of the misrepresentations; the truth would become evidence only after the pattern was repeated over the course of years" [Dkt. 43 at 14]. In response to Plaintiff's assertion of tolling, Defendant contends "this attempt to toll *785 the limitations period fails because Plaintiff alleges he was aware in 2006 of the alleged facts giving rise to his property valuation claims. Moreover, Plaintiff previously asserted all of these claims in a lawsuit he filed against Defendant in November 2013. This demonstrates Plaintiff had actual knowledge of his claims and failed to timely bring them" [Dkt. 50 at 2]. The Court considers each of Plaintiff's asserted bases for tolling limitations herein.
Alleged Violations of the Texas Constitution
Plaintiff claims his Loan exceeded 80% of the fair market value of the Property when the Loan closed on December 21, 2006, and that Defendant fraudulently obtained the appraisal which enabled the Loan to close. To the extent Plaintiff's claims for breach of contract, promissory estoppel, common law fraud, negligent misrepresentation, negligence, and gross negligence are premised on these facts and thus based on alleged Texas Constitutional violations, Plaintiff is not entitled to any tolling because such claims necessarily would have occurred long before January 2014.[3] The Loan was created in December 2006. Thus, when Plaintiff filed this lawsuit in January 2018, the statute of limitations had long since passed on any claims premised on these facts; further, Plaintiff clearly had knowledge of his claims regarding the Property valuation at the time of filing the Second Lawsuit, as readily apparent from a review of this complaint in his First Lawsuit, filed in 2013, and dismissed on March 31, 2015. Thus, any claims premised on the origination of the Loan in December 2006 and/or the appraisal obtained in connection with same are time-barred and fail as a matter of law.
Alleged Loan Modifications - Discovery Rule
Plaintiff further claims that he submitted multiple loan modification applications, generally referencing the years 2008 and 2018, at least some of which Defendant accepted and/or agreed to in writing, but then subsequently failed to modify the Loan, as agreed [Dkt. 43]. Any argument by Plaintiff that he is entitled to a tolling of the statute of limitations as to these allegations is also unpersuasive.
Texas's discovery rule acts as "an exception to the general rule of accrual of a cause of action for limitations purposes." Whiddon v. Chase Home Fin., LLC , 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009). The discovery rule tolls the limitations period "until such time as the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, facts indicating that he has been injured." Id. (citing TIG Ins. Co. v. Aon Re, Inc. , 521 F.3d 351, 357 (5th Cir. 2008) ). The application of the discovery rule is generally "limited to situations where the nature of the injury is 'inherently undiscoverable' and 'objectively verifiable.' " Id. (citing Via Net v. TIG Ins. Co. , 211 S.W.3d 310, 313 (Tex. 2006) ). "The rule delays the statute of limitations only until the claimant knows or should know the facts that could support a cause of action, not until [the claimant] realizes that the facts do support a cause of action." Colonial Penn Ins. v. Mkt. Planners Ins. Agency , 157 F.3d 1032, 1034 (5th Cir. 1998). A plaintiff seeking to avail itself of the discovery rule must plead the rule's application in its original complaint or in an amended or supplemental complaint in response to a defendant's limitations defense.
*786 Higher Perpetual Energy, LLC v. Higher Power Energy, LLC , Civil Action No. 4:17-CV-414, 2018 WL 3031780, at *3 (E.D. Tex. June 18, 2018) (citing Woods v. William M. Mercer, Inc. , 769 S.W.2d 515, 518 (Tex. 1988) ). However, the discovery rule does not apply to the circumstance where a plaintiff merely fails to discover the injury or claim; the claim/injury must be undiscoverable to a reasonable plaintiff exercising due diligence. Brown, Ltd. v. Horwood , 58 S.W.3d 732, 734 (Tex. 2001) (stating discovery rule applies where the type of injury is not discoverable despite reasonable due diligence, not just that the injury was not discovered by a plaintiff). "To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct." Moor v. Travelers Ins. Co. , 784 F.2d 632, 633 (5th Cir.1986).
In the instant case, Plaintiff can make no such claim. The facts pleaded in the Second Lawsuit are substantively identical to those pled in his First Lawsuit. Indeed, Plaintiff alleged these same or similar facts, detailing specific loan packages sent to Defendant in December 2008, February 2009, March 2010, and June 2010 in his First Lawsuit. June 2010 is the latest (in time) specific loan modification Plaintiff alleges in both the First and Second Lawsuit. Plaintiff therefore knew of Defendant's purported acceptances and failures to modify at the time of the First Lawsuit (and thus at least as early as November 6, 2013). Plaintiff does not allege any newly discovery facts or post-2013 acts of Defendant that might further toll the limitations period. Because the factual allegations in the instant complaint are substantially identical to the factual allegations raised by Plaintiff in 2013, there is no suggestion that further discovery will support the application of the discovery rule as to any loan modification applications. For that reason, any claims premised on Plaintiff's submission of loan modification applications are conclusively time-barred and fail as a matter of law. See Brinston v. Koppers Industries, Inc. , 538 F. Supp 2d 969, 975-976 (W.D. Tex. Jan. 31, 2008) ; Harrell v. S.P. Dairy Ashford , No.01-15-00865-CV, 2017 WL 1149683, at *3 (Tex. App.-Houston [1st Dist.] Mar. 28, 2017, not pet.) ("The discovery rule here was negated as a matter of law, as [plaintiff's] filing of his 2006 prior lawsuit-premised on the same complaints underlying this untimely suit-demonstrates that he was aware of facts giving rise to his claims.").[4]
*787 Failure to State a Claim
Even assuming that Plaintiff's aforementioned claims were not time-barred, such claims must nonetheless be dismissed under Rule 12(b)(6) for failure to state a claim.
Breach of Contract/Promissory Estoppel
Plaintiff has failed to sufficiently plead the elements of his breach of contract claim; having already thrice amended, Plaintiff continues to fail to identify the specific provisions in any contract that were allegedly breached by Defendant.[5] "[A]s a general rule, a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant." Baker v. Great N. Energy, Inc. , 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) (internal quotations and citations omitted); Morse v. Commonwealth Land Title Ins. Co. , Case No. 4:12CV375, 2013 WL 5372395, at *11 (E.D. Tex. Sept. 25, 2013) (finding that "[w]ithout identification of the... provisions breached... a breach of contract claim has not been stated and should be dismissed"). In addition, Defendant does not owe Plaintiff a duty of good faith and fair dealing in this case. See FDIC v. Coleman , 795 S.W.2d 706, 708-10 (Tex. 1990) ; Rabe v. Wells Fargo Bank, N.A. , No. 4:11-CV-787, 2013 WL 5458068 (E.D. Tex. Sep. 30, 2013).
Plaintiff has also failed to sufficiently plead a claim for promissory estoppel. To state a claim for promissory estoppel, a plaintiff must allege: (1) that the defendant made a promise; (2) that the defendant should have foreseen that the plaintiff would rely on the promise; (3) that the plaintiff did, in fact, act in reliance on the promise to his detriment; and (4) that injustice can only be avoided by enforcing the promise. See C Trammell Crow Co. No. 60 v. Harkinson , 944 S.W.2d 631, 636 (Tex. 1997). Plaintiff has not sufficiently alleged the necessary elements, including specifically any reliance damages for a promissory estoppel claim. To show detrimental reliance, "a plaintiff must show that he materially changed his position in reliance on the promise." Motten v. Chase Home Fin. , 831 F. Supp. 2d 988, 1002 (S.D. Tex. 2011). Plaintiff's claim for promissory estoppel is fatally conclusory and states merely:
[Defendant] made promises to [Plaintiff]. [Plaintiff] reasonably and substantially relied upon those promises to his detriment. [Plaintiff's reliance upon those promises was foreseeable by [Defendant]. Injustice can be avoided by enforcing those promises.
[Dkt. 43 at 28]. This is insufficient to state a claim.
Moreover, to the extent these claims are based on any alleged oral promise to modify Plaintiff's Loan, Plaintiff's breach of contract and promissory estoppel claims are further barred by the statute of frauds. See Tex. Bus. & Com. Code § 26.02(a)(2) and (b) (a loan agreement involving a loan exceeding $ 50,000 in value *788 is subject to the statute of frauds); Fed. Land Bank Ass'n of Tyler v. Sloane , 825 S.W.2d 439, 442 (Tex.1991) (any contract subject to the statute of frauds and not in writing is unenforceable under Texas law). Governing authority is clear that any modification of the underlying loan agreement must have been in writing for Plaintiff to base a contract claim on it. Martins v. BAC Home Loans Serv., L.P. , 722 F.3d 249, 256 (5th Cir. 2013) ("An agreement regarding the transfer of the property or modification of a loan must therefore be in writing to be valid."); Gordon v. JPMorgan Chase Bank, N.A. , 505 F. App'x 361, 364 (5th Cir. 2013) (original mortgage documents and forbearance agreement are governed by the statute of frauds and cannot be modified by subsequent oral agreement to modify the loan).
Promissory estoppel also cannot save Plaintiff's claims. Promissory estoppel only overcomes Texas's statute of frauds where the alleged oral agreement to modify a loan is accompanied by the lender's or its agent's promise to sign a written agreement validating the oral agreement that itself satisfies the statute of frauds. Martins , 722 F.3d at 256 ("Martins alleges only an oral agreement, not a promise on the part of BAC or its agents to sign an agreement validating the oral agreement that would satisfy the statute of frauds."); Miller v. BAC Home Loans Serv., L.P. , 726 F.3d 717, 726 (5th Cir. 2013) (lack of promise to sign a prepared document that comports with Texas's statute of frauds, which would have memorialized oral promises regarding modification was fatal to borrowers' promissory estoppel claims); Martin-Janson v. JP Morgan Chase Bank, N.A. , 536 F. App'x 394, 398 (5th Cir. 2013). Accordingly, Plaintiff's breach of contract and promissory estoppel claims should be dismissed.
Common Law Fraud
The Court further finds that Plaintiff has failed to meet the heightened Fed. R. Civ. P. 9(b) standard for pleading fraud. Rule 9(b) contains a heightened pleading standard and requires a plaintiff to plead the circumstances constituting fraud with particularity. See Fed. R. Civ. P. 9(b) ; City of Clinton, Ark. v. Pilgrim's Pride Corp. , 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Williams v. WMX Techs. , 112 F.3d 175, 177 (5th Cir. 1997) ; Tuchman v. DSC Communications Corp. , 14 F.3d 1061, 1068 (5th Cir. 1994) (quoting Tel-Phonic Services, Inc. v. TBS Intern., Inc. , 975 F.2d 1134, 1139 (5th Cir. 1992) ). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. Benchmark Electronics, Inc. v. J.M. Huber Corp. , 343 F.3d 719, 724 (5th Cir. 2003) ; Benchmark Elecs., Inc. v. J.M. Huber Corp. , 343 F.3d 719, 724 (5th Cir. 2003) (quoting Williams v. WMX Techs., Inc. , 112 F.3d 175, 179 (5th Cir. 1997) ). Here, Plaintiff's Fourth Amended Complaint makes conclusory allegations of "fraudulent acts" by Defendant, but does not identify a date, time, location, speaker or state anything more than conclusory allegations as to Defendant's intent that Plaintiff act upon any alleged misrepresentation. Plaintiff's common law fraud claim should be dismissed. See e.g. Gipson v. Deutsche Bank Nat. Trust Co. , No. 3:13-CV-4820-L, 2015 WL 2069583, at *13-14 (N.D. Tex. May 4, 2015) (dismissing plaintiff's fraud claims for failure to state a claim and failure to meet the heightened pleading requirements of Rule 9(b) ). Plaintiff falls short of the requirements of Rule 9(b).
*789 Negligent Misrepresentation
Plaintiff has similarly failed to meet the 9(b) heightened pleading standards in connection with his claim for negligent misrepresentation. Rule 9(b) governs the pleading requirements for negligent misrepresentation claims when the "fraud claim is so intertwined with the negligent misrepresentation claim that it is not possible to describe a simple redaction that removes the fraud claim while leaving behind a viable negligent misrepresentation claim." American Realty Trust, Inc. v. Travelers Cas. and Sur. Co. of Am. , 362 F.Supp.2d 744, 752 (N.D.Tex.2005) ; see also Benchmark Elec., Inc. v. J.M. Huber Corp. , 343 F.3d 719, 723-24 (5th Cir.2003). Plaintiff's common law fraud claim and negligent misrepresentation claim are virtually identical stated in Plaintiff's pleading [see Dkt. 43 at 28-33]; as such, Rule 9(b)'s pleading standards are applicable. Plaintiff has failed to state with specificity its claim for negligent misrepresentation. Separate and apart from Rule 9(b), Plaintiff has also failed to sufficiently plead a misstatement of existing fact. See De Franceschi v. BAC Home Loans Servicing, L.P. , 477 F. App'x 200, 205 (5th Cir. 2012).
Negligence and Gross Negligence
Plaintiff has failed to state a cognizable claim against Defendant for negligence or gross negligence because Plaintiff has failed to establish that Defendant owed Plaintiff a legal duty. The elements of a negligence claim under Texas law are: "(1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach." Sport Supply Group, Inc. v. Columbia Cas. Co. , 335 F.3d 453, 466 (5th Cir.2003) (citing Van Horn v. Chambers , 970 S.W.2d 542, 544 (Tex. 1998) ; Praesel v. Johnson , 967 S.W.2d 391, 394 (Tex.1998) ). Gross negligence, a heightened form of negligence requiring proof of "an extreme degree of risk" and "conscious indifference" by the negligent actor, also requires a demonstration of a legal duty. Mobil Oil Corp. v. Ellender , 968 S.W.2d 917, 921 (Tex.1998) ; West v. SMG , 318 S.W.3d 430, 442-43 (Tex. App-Houston [1st Dist.] 2010). Courts examining whether a legal duty exists under Texas law look to three predominant factors: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy considerations." Texas Home Mgmt., Inc. v. Peavy , 89 S.W.3d 30, 34 (Tex.2002).
Plaintiff's sole allegations regarding duty are that Defendant "owed a legal duty of ordinary care to [Plaintiff] with respect to [Defendant's] products and services" [Dkt. 43 at 34]. Such meager allegations do not support any inference that Defendant owed-let alone breached-a legal duty to Plaintiff. See Pemberton v. PNC Bank Nat'l Ass'n , Civil Action No. H-12-756, 2012 WL 2122201, at *3 (S.D. Tex. June 11, 2012) (finding plaintiffs failed to allege sufficient facts to state a plausible negligence claim where the complaint merely addressed communications between plaintiffs and defendant-bank regarding a loan modification application). Moreover, Texas courts have found that no special relationship exists between a mortgagor and mortgagee, or between a servicer and a borrower, that imposes a duty enforceable by a tort claim. Accordingly, Plaintiff's negligence and gross negligence claims should be dismissed.[6]
*790 Plaintiff is Not Entitled to "Spoliation Inference"
As to those claims which are not time-barred, Plaintiff alleges his claims cannot be dismissed because he is entitled to a spoliation inference. Plaintiff has failed to demonstrate that he is entitled to any inference that Defendant destroyed evidence in this case. "Spoliation is the destruction or material alteration of evidence or...the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Nieman v. Hale , No. 3:12-cv-2433-L-BN, 2014 WL 1577814, at *3 (N.D. Tex. Apr. 21, 2014) (quoting Ashton v. Knight Transp., Inc. , 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (internal quotation marks omitted)). "The party seeking the spoliation sanction bears the burden of proof." Id. (quoting Ashton , 772 F. Supp. 2d at 800 ). "The elements of spoliation in the Fifth Circuit are: (1) a duty to preserve the information; (2) a culpable breach of that duty; and (3) resulting prejudice to the innocent party." Id. (citing Ashton , 772 F. Supp. 2d at 800 ; Rimkus Consulting Group v. Cammarata , 688 F. Supp. 2d 598, 612-16 (S.D. Tex. 2010) (to obtain sanctions for spoliation of evidence, a party must establish: "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.")).
Other than vague, repeated allegations that Defendant "destroyed all or virtually all of the documents relating to [Plaintiff's] numerous attempts, over the course of a decade, to modify his [Loan]" [Dkt. 43 at 16], Plaintiff has utterly failed to address any of the aforementioned elements for spoliation as set forth by the Fifth Circuit. Plaintiff's pleadings are devoid of any specific allegations that would establish the bad faith required for the Court to exercise its inherent powers or that would provide the Court with a basis to assess sanctions. Notably, Plaintiff did not assert the destruction of documents or allege spoliation in connection with his First Lawsuit. The discovery deadline in Plaintiff's First Lawsuit was initially February 2015; Plaintiff's First Lawsuit was dismissed in March 2015 after it had been pending for over a year and Plaintiff had an opportunity to conduct discovery. Plaintiff's claims are not precluded from dismissal by virtue of his assertion of the "spoliation inference rule".
Quiet Title Claim
Plaintiff Fails to State a Claim
Plaintiff's suit to quiet title fails as a matter of law. In a suit to quiet title action, a plaintiff must show: "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable." Krishnan v. JP Morgan Chase Bank, N.A. , No. 4:15-CV-00632-RC-KPJ, 2017 WL 6003105, at *4 (E.D. Tex. Oct. 11, 2017) (Priest-Johnson, J.) (citing Wagner v. CitiMortgage, Inc. , 995 F. Supp. 2d 621, 626 (N.D. Tex. 2014) (citing Vernon v. Perrien , 390 S.W.3d 47, 61 (Tex. App.-El Paso 2012, pet. denied) )); Cruz v. CitiMortgage, Inc. , No. 3:11-CV-2871-L, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing Sadler v. Duvall , 815 S.W.2d 285, 293 n. 2 (Tex. App.-Texarkana 1991, writ denied) ). Texas courts have made clear that "a necessary prerequisite to the... recovery of title... is tender of whatever amount is owed on the note." Fillion v. David Silvers Company , 709 S.W.2d 240, 246 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.). Furthermore, a plaintiff is required to base his *791 or her claim solely on the strength of his or her own title and not the asserted weaknesses of the defendant's title. See Martin v. Amerman , 133 S.W.3d 262, 265 (Tex. 2004) ; Ballard v. Allen , No. 12-03-00370-CV, 2005 WL 1037514, at *3 (Tex. App.-Tyler May 4, 2005, no pet.) ; Warren v. Bank of Am., N.A. , 566 F. App'x 379, 382 (5th Cir. 2014).
In the instant case, Plaintiff alleges that Defendant has created a cloud on Plaintiff's title to the Property by asserting nonexistent rights against the Property [Dkt. 43 at 20]. Specifically, Plaintiff alleges that the "ill-gotten, invalid lien" clouds Plaintiff's title [Dkt. 43 at 20-21]. However, Plaintiff does not reference how the type of interest Plaintiff has in the property is superior to that of Defendant. Cruz , 2012 WL 1836095, at *4.[7] Instead of providing that he is current on his mortgage payments, Plaintiff solely relies on the alleged weakness of Defendant's title to prevail on his claim. Warren v. Bank of America, National Association , 566 Fed.Appx. 379 (5th Cir.2014) ; Hurd v. BAC Home Loans Servicing, LP , 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012) ; Reese v. Wells Fargo Bank, N.A. , No. 3:17-CV-2174-G, 2017 WL 5992406, at *4-5. Plaintiff's claim to quiet title to the Property therefore fails to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and must be dismissed.
Sworn Affidavit Contradicts Quiet Title Claim
Plaintiff's claim is further barred because his sworn affidavit contradicts his quiet title claim. Indeed, Plaintiff's only allegation that Defendant is clouding Plaintiff's title is that the Loan in favor of Defendant is invalid because the Loan was more than 80% of the fair market value of the Property [Dkt. 43 at 18-21]. However, Plaintiff swore in the Home Equity Affidavit that the amount of the Loan, "when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the property," did not exceed 80% of the fair market value of the Property [Dkt. 50-2].
Plaintiff alleges that the Court cannot consider this document, or any other "extrinsic document" at the Rule 12(b)(6) stage. Specifically, with respect to Plaintiff's quiet title claim and "Contest of the Right to Foreclose,"[8] Plaintiff alleges that the bankruptcy schedules, the Security *792 Instrument, and accompanying Affidavit are "irrelevant to the dismissal inquiry" and because he does not refer to these documents and because they are not integral or central to Plaintiff's claims they cannot be considered by the Court at the dismissal stage [Dkt. 58 at 10-12].
When considering a motion to dismiss, the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC , 594 F.3d 383, 387 (5th Cir. 2010) (citing Collins v. Morgan Stanley Dean Witter , 224 F.3d 496, 498-99 (5th Cir. 2000) ). Further, a court has the discretion to take judicial notice of an "adjudicative fact," including other court cases, at any stage of a proceeding upon request by a party or sua sponte . Fed. R. Evid. 201 ; Norris v. Hearst Trust , 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record"); Coleman v. Dretke , 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of a Texas agency's website). "Taking judicial notice... does not transform [a] motion [to dismiss] into one for summary judgment." Motten v. Chase Home Fin. , 831 F. Supp. 2d 988, 993 (S.D. Tex. 2011) (citing Funk v. Stryker Corp. , 631 F.3d 777, 780 (5th Cir. 2011) ); Thomas v. Beaumont Indep. Sch. Dist. , No. 1:15-CV-112, 2016 WL 922182, at *3 (E.D. Tex. Feb. 12, 2016) (holding that the Court could consider the filings and procedural matters in plaintiff's state court case in analyzing the motion to dismiss because the state court proceeding is a matter of public record), report and recommendation adopted , No. 1:15-CV-112, 2016 WL899870 (E.D. Tex. Mar. 8, 2016).
Plaintiff's home equity documents, including specifically the Security Instrument and Affidavit, bankruptcy schedules, and prior lawsuit may be properly considered by the Court. They are matters of public record and/or are referenced in Plaintiff's Complaint. Contrary to Plaintiff's assertions, his Plaintiff's Amended Complaint expressly references his bankruptcy as well as the Security Instrument, which in turn refers to the Affidavit [Dkt. 43 at 10-11]. These records - including most importantly to this case, the Affidavit - may be properly considered by the Court without turning Defendant's Motion to Dismiss into a Motion for Summary Judgment. See e.g. , Summers v. PennyMac Corp. , 2012 WL 5944943, at *9 (N.D. Tex. Nov. 28, 2012) (granting the motion to dismiss, after finding that "[because] the Note, Security Instrument, and Home Equity Affidavit were all part of the loan application process and necessary for approval of Plaintiffs' loan, the court believes that the Home Equity Affidavit executed by Plaintiffs falls within the scope of pleadings as described by the Fifth Circuit in Collins and therefore considers the document in deciding [defendant's] motion to dismiss."); Reese v. Wells Fargo Bank, N.A. , No. 3:17-CV-2174-G, 2017 WL 5992406, at *2 (similar)
Because Plaintiff's sworn testimony in the Affidavit indicates that the Loan amount was less than 80% of the fair market value of the Property, the Affidavit contradicts Plaintiff's allegations as to his quiet title claim. "If an exhibit attached to the complaint contradicts an allegation in the complaint, the exhibit controls." United States ex rel. Riley v. St. Luke's Episcopal Hosp. , 355 F.3d 370, 377 (5th Cir. 2004). Because the Affidavit is a part of pleadings, and may be considered, at this stage, as indicated supra , the Affidavit is therefore controlling. See e.g. , Summers v. PennyMac Corp. , 2012 WL 5944943, at *9 (holding that the sworn statement in the *793 Home Equity Affidavit was controlling and contradicted plaintiffs' allegations that the principal amount of a home equity loan was more than 80% of the fair market value of the property in violation of the Texas Constitution). Plaintiff makes no other allegations to indicate why the Loan is invalid, nor does he offer any other argument demonstrating the superiority of his title. Because Plaintiff does not, and cannot, allege any facts establishing that he has superior title to the Property, for this additional reason the claim for quiet title should be dismissed.[9]
Remaining Claims and Relief
Exemplary Damages and Attorney's Fees
In his Amended Complaint, Plaintiff asserts that he is entitled to attorney's fees and costs and exemplary damages against Defendant [Dkt. 43 at 40]. However, the Court finds that Plaintiff is not entitled to any award of exemplary damages because Plaintiff has failed to state a claim for any cause of action. Traditionally, exemplary damages are available so long as there is a finding of actual damages, among other requirements. See Safeshred, Inc. v. Martinez , 365 S.W.3d 655, 660 (Tex. 2012). Plaintiff has failed to plead any actual damages; thus, exemplary damages are unavailable.
Similarly, Plaintiff's request for attorney's fees and costs is barred because Plaintiff has not pleaded any viable causes of action that would allow for recovery of attorney's fees. Billiter v. Cent. Mortg. Co. , No. CIV.A. H-14-663, 2015 WL 867443, at *7 (S.D. Tex. Feb. 17, 2015) ("Here, as Plaintiff has no viable claims against Defendant, Plaintiff cannot... obtain attorney's fees as a prevailing party."); Donnelly v. JPMorgan Chase Bank, N.A. , No. CIV.A. H-15-1671, 2015 WL 6690257, at *4 (S.D. Tex. Oct. 16, 2015), report and recommendation adopted , No. CIV.A. H-15-1671, 2015 WL 6701922 (S.D. Tex. Nov. 3, 2015) (same). In Texas, a party may recover attorney's fees from an adverse party only where permitted by a statute or a rule of procedure. See In re Nalle Plastics, F.L.P. , 406 S.W.3d 168, 172 (Tex. 2013). Plaintiff has not asserted any viable cause of action against Defendant capable of supporting his request for attorney's fees and costs. Accordingly, Plaintiff's request for fees and costs should be denied.
Injunctive Relief
Plaintiff's final cause of action asserted in his Amended Complaint is for permanent injunctive relief (Count 10) [Dkt. 43 at 37]. "Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." Cook v. Wells Fargo Bank, N.A. , Civil Action No. 3:10-CV-0592-D, 2010 WL 2772445, at *4 (N.D. Tex. 2010). As indicated supra , because Plaintiff has failed to state any valid causes of action against Defendant, there is no underlying cause of action for which the Court can provide this equitable remedy. Accordingly, Plaintiff's request for injunctive fails as a matter of law. See Wildy v. Wells Fargo Bank N.A. , Civil Action No., 2013 WL 246860 (N.D. Tex. Jan. 21, 2013) (denying plaintiffs' request for injunctive *794 relief where all of plaintiffs' underlying claims were dismissed for failure to state a claim).
Declaratory Relief
Any claims by Plaintiff for declaratory relief also fail. "Entitlement to declaratory relief is dependent upon the plaintiff first pleading a viable underlying cause of action." Endsley v. Green Tree Servicing LLC , No.5:15CV151-RWS-CMC, 2017 WL 1856281, at *11 (E.D. Tex. Feb. 8, 2017), report and recommendation adopted , No. 5:15-CV-151, 2017 WL 1862191 (E.D. Tex. May 8, 2017) ) (citing Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods , 915 F.2d 167, 170-71 (5th Cir. 1990) (federal declaratory judgment act is remedial only; it is the defendant's underlying cause of action against the plaintiff that is litigated in a suit under the act)). "Where all the substantive, underlying claims are subject to dismissal, a claim for declaratory relief cannot survive." Wallace v. U.S. Bank, N.A. , No. 4:17-CV-437, 2018 WL 1224508, at *2 (E.D. Tex. Mar. 9, 2018) (citing Walls v. JPMorgan Chase Bank, NA , No. 4:13-cv-402, 2013 WL 5782999, at *4 (E.D. Tex. Oct. 25, 2013) ).
CONCLUSION AND RECOMMENDATION
Based on the foregoing, the Court recommends that Defendant's Motion to Dismiss Plaintiff's Fourth Amended Complaint with Jury Demand [Dkt. 50] be GRANTED , and each and every of Plaintiff's claims be dismissed.
Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.
Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. See Douglass v. United Services Automobile Ass'n , 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds , 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).
SIGNED this 14th day of February, 2019.

Washington Mutual Bank later sold the Loan to Defendant (Dkt. #43 at p. 11).

Insofar as Plaintiff objects to the Report's conclusion that his quiet title claim was time-barred (Dkt. #89 at p. 21), the Court finds that there is no such conclusion in the Report - the Report expressly carves out Plaintiff's quiet title claim from its analysis of the applicability of statute of limitations to Plaintiff's allegations (Dkt. #77 at p. 7, n. 6). Such objection is overruled.

The Report set forth that Plaintiff's claims to quiet title and contest to foreclosure were substantively similar.

The majority of these allegations are not contained in Plaintiff's live pleading, and therefore, are not properly before the Court. "New claims and issues may not, however, be raised for the first time in objections to a Report and Recommendation." Andrews v. United States , 4:10-CR-152(05), 2019 WL 913873, at *1 (E.D. Tex. Feb. 22, 2019) (citing United States v. Armstrong , 951 F.2d 626, 630 (5th Cir. 1992) ); Paup v. Texas , 6:16-CV-417-RWS-KNM, 2017 WL 1129906, at *5 (E.D. Tex. Mar. 27, 2017).

Compare the factual allegations in the Second Lawsuit with the First Lawsuit, 4:13-cv-710 (ECF #20).

"A statute of limitations defense may be properly raised in a Rule 12(b)(6) motion to dismiss when the complaint affirmatively shows that the claims are time-barred." See SB Int'l Inc. v. Jindal , No. CIV A 306-CV-1174-G, 2007 WL 1411042, at *3 (N.D. Tex. May 14, 2007) ; Whiddon v. Chase Home Fin. , LLC, 666 F. Supp. 2d 681, 686 (E.D. Tex. 2009).

The Fifth Circuit repeatedly has held that claims arising from alleged noncompliance with Section 50(a)(6) accrue when the loan is made. See Alexander v. Wells Fargo Bank, N.A ., 867 F.3d 593, 603 (5th Cir. 2017).

To the extent Plaintiff's allegation that "[o]ver multiple years (commencing in 2008 and continuing through 2018), [Plaintiff] relied upon Defendant's misrepresentations regarding his loan modification" [Dkt. 43 at 8] can be considered to invoke or allege a "continuing violation," the Court concludes that such a theory is not sufficiently pleaded. Consider in Lenihan, the court described a continuing violation as "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." Lenihan v. Boeing Co. , 994 F.Supp. 776 (S.D.Tex.1998) (quoting Dasgupta v. University of Wis. Bd. of Regents , 121 F.3d 1138, 1139 (7th Cir.1997) ). Statutes of limitation keep stale claims out of court, but when violations are on a continuing basis, their staleness disappears. Havens Realty Corp. v. Coleman , 455 U.S. 363, 380, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (citing Chase Securities Corp. v. Donaldson , 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628, (1945) ). However, the Fifth Circuit has warned against using "the continuing violation theory 'to resurrect claims about discrimination concluded in the past, even though its effects persist.' " Berry v. Board of Supervisors of L.S.U. , 715 F.2d 971, 979 (5th Cir.1983) (quoting Delaware State College v. Ricks , 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ). The "theory of continuing violation has to be guardedly employed because within it are the seeds of destruction of the [applicable] statute of limitation." Abrams v. Baylor College of Med. , 805 F.2d 528, 533 (5th Cir.1986). To ensure the theory of continuing violation is only applied in appropriate cases, the Fifth Circuit established a three-factor test to determine when the continuing violation theory is applicable. See Berry , 715 F.2d at 981. Assuming arguendo that the continuing violation theory is applicable to cases other than discrimination cases-which the Court does not decide-Plaintiff fails the three-factor test.

Notably, Plaintiff raised this same claim in his First Lawsuit, and it was dismissed for these identical reasons.

Because the Court finds that Plaintiff's non-quiet title claims are time barred or are insufficiently pleaded, the Court does not reach Defendant's further arguments regarding standing, judicial estoppel, or the economic loss doctrine.

Moreover, Plaintiff has not alleged that he has tendered the amount due on the Note, which is a prerequisite to recovering title through a quiet title action. Moore v. Ameriquest Mortg. Co. , No. 4:16CV380 (E.C.F. No. 74 at 8) (Priest-Johnson, J.), report and recommendation adopted by , No. 4:16CV380, 2017 WL 603323, at *5 (E.D. Tex. Feb. 15, 2017) (Mazzant, J.) (pre-foreclosure sale suit to quiet title required tender) (citing Kingman Holdings, LLC v. CitiMortgage, Inc. , No. 4:10-CV-619, 2011 WL 1883829, at *4 (E.D. Tex. Apr. 21, 2011) (Mazzant, J.), report and recommendation adopted , No. 4:10-CV-619, 2011 WL 1878013 (E.D. Tex. May 17, 2011).

The Court notes that, in substance, Plaintiff's "Contest of the Right to Foreclose" claim (Count 9) is substantively the same as Plaintiff's quiet title claim (Count 1). To the extent that Plaintiff's "Contest of the Right to Foreclose" was an attempt to assert a wrongful foreclosure claim, such a claim cannot succeed as a matter of law. See e.g. , Ayers v. Aurora Loan Serv., LLC , 787 F. Supp. 2d 451, 454 (E.D. Tex. 2011) (dismissing Plaintiff's wrongful foreclosure claim when no foreclosure sale had yet taken place). Nowhere in the pleadings does Plaintiff assert that a foreclosure sale has occurred. Indeed, Plaintiff clearly pleads that "[he] is an individual residing at the [Property]" [Dkt. 43 at 5 (emphasis added) ]. As such, the Court will consider Plaintiff's claim for "Contest of the Right to Foreclose" as part of his quiet title claim.

Defendant additionally asserts that Plaintiff's quiet title claim should be dismissed based on equitable subrogation. [Dkt. 50 at 17-18]. Because the Court finds Plaintiff's quiet title claim and "Contest of the Right to Foreclose" claim against Defendant should be dismissed for failure to state a claim, the Court need not address Defendant's alternative argument for subrogation. See Sierra v. Ocwen Loan Servicing, LLC , Civ. Action No. H-10-4984, 2012 WL 527940, at *2, n.5 (S.D. Tex. Feb. 16, 2012) ("Because the Court finds entirely for the defendant, it need not address its alternative equitable subrogation claim.").