# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 11, 2010

No. 08-11038

Charles R. Fulbruge III
Clerk

LONE STAR FUND V (US), LP; LSF5 BOND HOLDING LLC

Plaintiffs - Appellants

v.

BARCLAYS BANK PLC; BARCLAYS CAPITAL INC

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and GARZA and STEWART, Circuit Judges.

EDITH H. JONES, Chief Judge:

Lone Star Fund V (U.S.), L.P. and LSF5 Bond Holdings, LLC (collectively "Lone Star" or "Appellants") allege that Barclays Bank PLC and Barclays Capital, Inc. (collectively "Barclays" or "Appellees") engaged in a $60 million fraud relating to mortgage-backed securities that Barclays sold to Lone Star. The district court dismissed the case for failure to state a claim. Because Lone Star fails to allege a misrepresentation in light of the "repurchase or substitute" clauses in the parties' mortgage-backed securities contracts, we affirm the district court's dismissal.

No. 08-11038

## I. BACKGROUND

Among its other enterprises, Barclays sells mortgage-backed securities. As their name suggests, mortgage-backed securities are secured by pools of mortgages. To grossly simplify the series of transactions involved here, mortgage-backed securities work in the following manner: Mortgages are collected into a trust, mortgage payments are sent to that trust, then pooled, and then paid out to the holders of the securities. The quality of the mortgage pool is crucial. If the mortgage pool comprises loans whose borrowers consistently pay in a timely manner, securities holders will receive a steady stream of income. In contrast, if the mortgage pool is "sub-prime," or at risk for missed payments, then securities holders may not receive the forecast income stream. Delinquent mortgages result in smaller payment streams and smaller payments to securities holders.

This dispute involves two sets of mortgage-backed securities that Barclays sold to Lone Star. To create the securities, in 2006, Barclays purchased residential mortgages from NC Capital Corporation ("New Century") pursuant to the Mortgage Loan Purchase Agreement ("MLPA"). According to the MLPA's terms, New Century agreed to indemnify and hold harmless Barclays (or provide contribution rights where indemnity might not be available) against all losses, claims, damages, and liabilities in a variety of circumstances, including any breach of a representation about the mortgages (such as payment defaults), and any claims made against Barclays by third parties.[1] This allowed Barclays to serve as an effective distributor of mortgage-backed securities. New Century would bear the risk of having sold bad mortgage loans, while Barclays could focus on packaging the loans into securities and marketing them to potential investors.

---

[1] Appellants do not dispute New Century's indemnification and contribution obligations to Barclays.

No. 08-11038

After purchasing the mortgages from New Century, Barclays pooled them into two separate trusts: the BR2 Trust and the BR3 Trust. The BR2 and BR3 Trusts issued the securities to Lone Star in two separate transactions. In May 2007, Barclays Capital, Inc. as underwriter, sold approximately $45 million in securities backed by the BR2 Trust mortgages to LSF5 Bond Holdings, LLC pursuant to a prospectus and prospectus supplement (the "BR2 Supplemental Prospectus"). In June 2007, in a similar transaction, Barclays Capital, Inc. underwrote approximately $16 million of securities backed by the BR3 Trust to LSF5 Bond Holdings, LLC pursuant to a prospectus and prospectus supplement (the "BR3 Supplemental Prospectus"). Both the BR2 and BR3 Supplemental Prospectuses included, inter alia, representations and warranties guaranteeing the quality of the mortgage pools, which together contained more than ten thousand residential mortgages.[2]

Shortly after the purchases, Lone Star discovered that 290 mortgages in the BR2 Trust were more than thirty days overdue ("delinquent") at the time of purchase. In a letter dated November 7, 2007, Barclays admitted that 144 of the mortgages were delinquent and promptly substituted new mortgages to replace any that were still delinquent. Lone Star investigated the BR3 Trust further and found that 848 of the loans in the BR3 Trust had been delinquent at the time of purchase.

In January 2008, Lone Star sued Barclays under both state and federal law for material misrepresentations and fraud in a Dallas, Texas state court. Lone Star alleged that, contrary to Barclays' representations, the BR2 and BR3 Trusts had a substantial number of delinquent loans, and that the misrepresentations constituted fraud. Barclays removed the case to federal court pursuant to 28 U.S.C. §§ 1334(b) and 1452(a). The district court accepted

---

[2] On April 2, 2007, however, New Century filed for reorganization in Delaware, and Barclays later filed a proof of claim for potential indemnification.

No. 08-11038

the removal, upholding jurisdiction because the dispute was "related to" New Century's bankruptcy.  Following the removal, Barclays moved to dismiss the case pursuant to Fed. Rule Civ. Proc 12(b)(6) for Lone Star's failure to state a claim.  The district court granted the motion.  Lone Star appeals.

## II. JURISDICTION

Before discussing the merits, this court must first address the issue of subject matter jurisdiction, which is reviewed *de novo*. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).  Bankruptcy jurisdiction, like all federal jurisdiction, must be based in statute. *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999). In this case, the MLPA's indemnity provisions are sufficient to create a dispute that is "related to" New Century's bankruptcy. 28 U.S.C. § 1334(b).  Federal courts have "related to" subject matter jurisdiction over litigation arising from a bankruptcy case if the "proceeding could conceivably affect the estate being administered in bankruptcy." *In re TXNB Internal Case*, 483 F.3d 292, 298 (5th Cir.) (citation omitted), *cert denied*, 128 S. Ct. 613 (2007). "Related to" jurisdiction includes any litigation where the "outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate." *Id.*  Barclays maintains that because the MLPA renders New Century liable for all damages that could be imposed on Barclays by this litigation, the district court had jurisdiction to rule on the case.

On appeal, Appellants have supplemented their argument and contend that "related to" jurisdiction only arises if claims for contribution or indemnity have "accrued." Appellants mean that a right to indemnity or contribution must be established such that no further litigation is required to substantiate such rights against the debtor.  Their reliance for this proposition on the Third Circuit's decision *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002), is misplaced. *Federal-Mogul* concerned tort contribution principles where

4

the debtor's liability for asbestos-caused injuries would ultimately have to be litigated before contribution rights would "accrue" in favor of other producers of asbestos products. We take no position on the *Federal-Mogul* situation. *Compare Arnold v. Garlock, Inc.*, 288 F.3d 234, 238-39 (5th Cir. 2002) (holding that absent a judgment against a defendant at time of removal, common law contribution could not give rise to "related to" jurisdiction). In this case, Barclays relies heavily, if not exclusively, on contractual indemnity provisions with New Century containing representations about the quality of the mortgage loans purchased by Barclays, which are nearly identical to the representations Barclays made to Lone Star. This circuit has already ruled, moreover, that contractual indemnification rights may give rise to "related to" jurisdiction. *See In re Stonebridge Techs., Inc.*, 430 F.3d 260, 266 (5th Cir. 2005) (holding that a debtor's letter of credit obligation triggered "related to" jurisdiction in a dispute between two non-bankrupt third parties).

## III.  DISCUSSION

Appellate review of a district court's dismissal for failure to state a claim under Rule 12(b)(6) is *de novo*. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Further, as the claims sound in fraud and negligent misrepresentation, Appellants must

No. 08-11038

plead the misrepresentations with particularity under Fed. Rule Civ. Proc. 9(b). *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723-24 (5th Cir. 2003).[3]

All of Appellants'[4] various claims[5] are predicated upon Barclays' alleged misrepresentation that there were no delinquent loans in the BR2 and BR3 Trusts when Lone Star purchased the securities. Consequently, to prevail, Appellants must successfully allege both that Barclays represented that the BR2 and BR3 Trusts had no delinquent mortgages and that the representations were false when made. We accept as true for present purposes that there were delinquent mortgages in the trusts when Lone Star purchased the securities. Appellants' remaining burden is to demonstrate how Barclays misrepresented that the BR2 and BR3 Trusts contained no delinquent mortgages.

To do this, Appellants first reference the BR2 and BR3 Supplemental Prospectuses, each of which stated:

---

[3] Barclays also contends that Lone Star did not meet the pleading requirements of Rule 9(b). Lone Star asserts that it does not need to satisfy Rule 9(b) for claims that do not involve fraud. Belying this contention is the fact that Lone Star's complaint, on its face, pleads with particularity the exact representations it claims were false. Moreover, Rule 9(b) does apply. "[T]his court has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims" such as when "fraud and negligent misrepresentation claims are based on the same set of alleged facts." *Benchmark*, 343 F.3d at 724. We need not determine, however, whether Lone Star fully complied with Rule 9(b) because taken, as a whole, the agreements covered by the complaint do not allege a misrepresentation in the first instance.

[4] Barclays contends that Lone Star Fund V does not have standing to bring any claims because it did not purchase the securities or suffer any direct harm. Only LSF5 Bond Holdings LLC, Lone Star Fund V's subsidiary, purchased the securities and suffered direct economic harm. If Lone Star Fund V were the sole plaintiff, we might have to address the issue of standing or real party in interest. However, LSF5 Bond Holdings LLC, which unquestionably has standing, is co-plaintiff.

[5] Appellants alleged claims related to Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77l(a)(2) and 77o; Section 33 of the Texas Securities Act, Tex. Rev. Civ. Stat. art. 581-33(A)(2); Tex. Bus. and Comm. Code § 27.01; and common law fraud, fraudulent inducement, and negligent misrepresentation.

6

No. 08-11038

Barclays will make representations and warranties with respect to each mortgage loan [New Century] sold to the sponsor as of the closing date, including, but not limited to:

> (1)    As of the servicing transfer date, except with respect to the Delinquent mortgage loans described under "*The Mortgage Loan Pool–General*" in this prospectus supplement, no payment required under the mortgage loan is 30 days or more Delinquent nor has any payment under the mortgage loan been 30 days or more Delinquent at any time since the origination of the mortgage loan.

In addition, both prospectuses reference a Representations and Warranties Agreement that Barclays signed, detailing similar representations and warranties about the mortgages. Appellants assert that the Representations and Warranties Agreement repeated Barclays' misrepresentations in the following pertinent clause:

> Payments Current. (i) All payments required to be made up to the Closing Date for the Mortgage Loan under the terms of the Mortgage Note, other than payments not yet 30 days delinquent, have been made and credited, [and] (ii) no payment required under the Mortgage Loan has been 30 days or more delinquent at any time since the origination of the Mortgage Loan[.]

Appellants also allege that less than two months before New Century went bankrupt, Barclays touted the due diligence it had performed on the underlying mortgage loan pools before soliciting Lone Star to buy the Securities.

Standing alone, these "no delinquency" provisions would support Appellants' contentions. Nevertheless, the representations are isolated portions of complex contractual documents that must be read in their entirety to be given effect. *Transitional Learning Community at Galveston, Inc. v. U.S. Office of Personnel Mgmt.,* 220 F.3d 427, 431 (5th Cir. 2000) ("[A] contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed

superfluous"); *also see Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 5 (2d Cir. 1996) ("It is undisputed that the prospectuses must be read as a whole.") (internal quotations and citations omitted); *Kass v. Kass*, 696 NE 2d 174, 180-81 (N.Y. 1998) ("Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.") (quoting *Atwater & Co. v. Panama R.R. Co.*, 159 N.E. 418, 419 (N.Y. 1927)).  Read as a whole, the prospectuses and warranties provide that the mortgages *should be* non-delinquent, but if some mortgages were delinquent then Barclays would either repurchase them or substitute performing mortgages into the trusts.  One way or another, Barclays committed that the mortgage loan pools would be free of delinquent mortgages. These "repurchase or substitute" clauses appear in both the BR2 and BR3 Supplemental Prospectuses[6] and the Representations and Warranties Agreement.[7]  Moreover, the clauses constitute the "sole remedy" for material breach for purchasers like Lone Star.

Thus, Barclays did not represent that the BR2 and BR3 mortgage pools were absolutely free from delinquent loans at the time of purchase.  The agreements envision that the mortgage pools might contain delinquent

---

[6] Both the BR2 and BR3 Prospectuses stated:

> The obligations of Barclays to cure such breach or to substitute or purchase the applicable mortgage loan will constitute the sole remedies respecting a material breach of any such representation or warranty to the holders of the [Securities], the servicer, the trustee, the depositor and any of its affiliates.

[7] The Representations and Warranties Agreements included the following clause:

> It is understood and agreed that the obligation of [Barclays PLC] set forth in Section 3(a) to purchase or substitute for a New Century Mortgage Loan in breach of a representation or warranty contained in Section 2 constitutes the sole remedy of the Depositor or any other person or entity with respect to such breach.

mortgages, and they impose a "sole" remedy to correct such mistakes. Indeed, Barclays fulfilled the repurchase or substitute obligations when Lone Star informed it of the delinquent mortgages in November 2007. Lone Star does not and cannot allege that Barclays breached its duty to remediate the mortgage pools.

These provisions are sensible given the difficulties of investigating the underlying residential mortgages. Even the best due diligence may overlook problems. A mortgage may become delinquent from a single missed payment. Some of the loans might fall into delinquency during the pendency of the transactions leading to an investor's purchases. Because mistakes are inevitable, both seller and purchaser are protected by a promise that the mortgage pools will be free from later-discovered delinquent mortgages. This is what Barclays promised and Lone Star agreed. As a sophisticated investor placing a $60 million investment in the trusts, Lone Star has no basis to ignore these provisions or their consequences.

Consequently, Barclays made no actionable misrepresentations. Even though the mortgage pools contained delinquent mortgages, Appellants have not alleged that Barclays failed to substitute or repurchase the delinquent mortgages. Appellants' efforts to focus on a single representation amid hundreds of pages of contractual documents are misplaced. They are bound by the entirety of the contract.

As a fallback, Appellants assert that the "repurchase or substitute" clauses are void as against public policy because they waive Appellants' right to sue for fraud. This argument is meritless. Under federal and Texas securities laws and Texas common law, a party cannot waive its right to bring fraud claims by contract or otherwise. *See* 15 U.S.C. § 77n; Tex. Rev. Civ. Stat. art. 581-33(L); *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Rather than waive Appellants' right to pursue claims of fraud, the "repurchase or

No. 08-11038

substitute" clauses change the nature of Barclays' representation. If Appellants had alleged that Barclays falsely represented to prospective investors that it would repurchase or substitute delinquent mortgages, they might have stated a case of fraud under the pertinent agreements. This is not their claim.

## IV.  CONCLUSION

Because a consideration of the parties' entire agreement reveals that Barclays has not made any misrepresentations, Appellants' claims fail as a matter of law. The district court correctly held that the allegations of Appellants' amended complaint do not set forth sufficient facts to state a claim for relief that is plausible on its face. The judgment of dismissal is **AFFIRMED**.