REVISED APRIL 26, 2011
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2011

Lyle W. Cayce
Clerk

No. 09-30397

NATHAN ROLLINS,

Plaintiff-Appellant

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY; JOHN B. JOSEPH, CCM1; JIMMY SMITH, Lieutenant Colonel; RICHARD STALDER, SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS,

Defendants-Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-463

Before JONES, Chief Judge,  BENAVIDES, Circuit Judge, and AYCOCK, District Judge.[*]

SHARION AYCOCK, District Judge.[**]

Nathan Rollins, Louisiana prisoner # 131530, filed a pro se, in forma pauperis (IFP), civil rights suit against officials at the Louisiana State Penitentiary at Angola (Angola) alleging that his housing assignment violated his due process and other constitutional rights.

---

[*] District Judge of the Northern District of Mississippi, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The defendants filed a motion for partial summary judgment based on qualified immunity. They also filed a motion to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6). The magistrate judge recommended that the defendants' motion to dismiss be granted, and that the motion for summary judgment be denied as moot. The district court adopted the magistrate judge's recommendation over Rollins' objection and granted the defendants' motion to dismiss. Rollins timely appealed. The district court denied Rollins' motion to proceed IFP on the basis that the appeal was not taken in good faith. Rollins then sought authorization from this Court for leave to proceed IFP on appeal. This Court denied Rollins' motion in part, but granted him IFP status on the sole issue of whether his housing assignment violated his due process rights. We affirm the district court.

## BACKGROUND FACTS

On June 30, 2006, Rollins, an inmate at Rayburn Correctional Center (formerly the Washington Correctional Institute), was found guilty by a prison disciplinary board of "aggravated work offenses" and sentenced to four weeks of cell confinement. On July 5, 2006, Rollins was transferred from Rayburn Correctional Center to Angola.[3] While at the Angola reception center, Rollins was notified that he had been assigned to the maximum security unit at Camp-J. Rollins was then placed in Camp-J administrative segregation. A review board consisting of defendants Jimmy Smith and John Joseph was held outside Rollins' presence. Rollins received a "board sheet" through prison mail stating the reason for his assignment to Camp-J was "nature of the original reason for lock-down [and] serious rule infraction." Rollins asserts that there was no "original reason" for the lock-down, and he had committed no rule infractions at Angola.

---

[3] Rollins asserts his geographic transfer had nothing to do with his most recent disciplinary infraction.

2

Rollins filed an administrative grievance. In response, he was told that his assignment to Camp-J was due to battery on a correctional officer and introduction of contraband into a correctional facility. The introduction of contraband offense occurred on February 29, 2004, and the battery on a correctional officer occurred on January 18, 2005. Rollins had previously served disciplinary sentences for these infractions while housed at Rayburn Correctional Center.

The defendants state that Camp-J is for "[i]nmates who require a higher degree of physical control because they have been found guilty of committing serious rule violations." Rollins describes Camp-J as "a special (super max) punitive management program." Camp-J is a three level program – Level I inmates receive the least amount of privileges, while Level III inmates receive the most. Although the exact date is not clear from the record before the court, at some point shortly after his arrival at Camp-J, Rollins was transferred out of administrative segregation and placed in Camp-J Level II.

As of the time of Rollins' amended complaint,[4] filed on January 15, 2008, he claims to have spent three months in Camp-J Level II and fifteen months on Level III. Rollins asserts that Angola officials have reviewed his classification twenty times,[5] and after each review he is informed that his classification is based on a serious rule infraction. Rollins claims that he received only "mock

---

[4] The district court denied Rollins' motion to amend. However, under the rules in effect at the time, Rollins was permitted to amend once as a matter of course before a responsive pleading had been filed. FED. R. CIV. P. 15(a); *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008). Because the defendants had not responded to Rollins' complaint when he filed his motion to amend, the district court abused its discretion when it denied the motion. *See Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 177 (5th Cir. 2007). Therefore, in determining whether Rollins has stated a claim for a due process violation, we will also consider the allegations in his amended complaint.

[5] In his brief, Rollins asserts that his status has now been reviewed "twenty-five (25) times, and a [sic] additional twenty (20) times."

reviews" before the board, that he was not given an opportunity to discuss the merits of his case, and that the warden told him he will remain in Camp-J indefinitely. We note that as of the date of his last filing in this case (October 27, 2010), Rollins is no longer housed in Camp-J.

## STANDARD OF REVIEW

Review of the district court's Rule 12(b)(6) dismissal of Rollin's complaint is de novo. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., 173 L. Ed. 2d 868. "We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005); see also Iqbal, 129 S. Ct. at 1950, 173 L. Ed. 2d 868 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

## DISCUSSION

A.    Record on Appeal

As an initial matter, this Court previously granted defendants' motion to supplement the record on appeal. Defendants have produced additional documentation to support their motion to dismiss which was never presented to

4

the district court.[6] In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund, 594 F.3d at 387. Furthermore, this Court will not consider evidence produced for the first time on appeal. See Leonard v. Dixie Well & Supply, Inc., 828 F.2d 291, 296 (5th Cir. 1987). Because the supplemental evidence presented by the defendants was not before the district court and may not be considered under Rule 12(b)(6), the Court finds the clerk's order granting the defendant's motion to supplement the record on appeal was improvidently granted. The additional evidence submitted is stricken and will not be considered by this Court.

## B.    Due Process Claim

Rollins argues that his placement in Camp-J violated his Fourteenth Amendment rights because he was placed there without a fair hearing. To maintain this due process challenge, Rollins must show that his placement and confinement in Camp-J deprive him of a cognizable liberty interest protected by the Fourteenth Amendment. Hernandez v. Velasquez, 522 F.3d 556, 562 (5th Cir. 2008) (citing Meachum v. Fano, 427 U.S. 215, 223, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)). In general, a prisoner has no liberty interest in his custodial classification. Id. (citations omitted). This court has repeatedly affirmed that "[p]rison officials should be accorded the widest possible deference" in classifying

---

[6] Among other things, the supplemental evidence shows that Rollins received state court convictions for introducing contraband into a correctional facility and battery on a correctional officer; information on living conditions and the privileges available to inmates in the different levels of Camp-J; and records showing Rollins was released to Camp-C on September 24, 2008. Rollins subsequently committed disciplinary infractions which resulted in him being placed in administrative segregation for nearly three months and then reassigned to Camp-J on December 21, 2009.

prisoners' custodial status as necessary "to maintain security and preserve internal order." Id. (citing McCord v. Maggio, 910 F.2d 1248, 1251 (5th Cir. 1990); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003)). "Only when a prisoner demonstrates 'extraordinary circumstances' may he maintain a due process challenge to a change in his custodial classification." Id. The Supreme Court has stated that only those conditions which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" will implicate the protection of the Due Process Clause of the United States Constitution. Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

However, before the Sandin test is triggered, it is crucial to determine whether Rollins placement in Camp-J was an "initial classification" or a punitive measure in response to his violation of prison rules. In Wilkerson, this Court explained:

> In resolving the nature of the liberty interest and the process that is due for confinement of prisoners in extended lockdown under these circumstances, it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules. Generally, courts are not concerned with a prisoner's initial classification level based on his criminal history before his incarceration. . . . Thus, if the inmates' confinement in extended lockdown is not the result of their initial classification, the Sandin test would be triggered.

Wilkerson, 329 F.3d at 435-36.

The district court, relying on Wilkerson, concluded that Rollins' assignment to Camp-J was an initial classification, stating "prison officials determined that placement of the plaintiff in a restrictive environment at [Angola] was appropriate, and the Court will not second guess this

6

determination." The defendants argue on appeal that Rollins' placement in Camp-J upon his arrival at Angola was an initial classification, rather than a disciplinary measure for his previous misbehavior, and therefore, the Sandin test is not implicated.[7] This Court has not yet addressed a situation such as this, where a prisoner is transferred to a new facility, and his housing assignment is based upon infractions committed at a prior facility. While we do not hold that consideration of a transferee's prior disciplinary history always transforms an initial classification into a punitive act, Rollins' pleadings indicate that he was placed in Camp-J solely because of disciplinary violations that occurred at the Rayburn Correctional Center. Further, Angola's own documentation states that Rollins' "reason for original lockdown" is a "rule violation." Therefore, taking as true Rollins' factual allegations, Iqbal, 129 S. Ct. at 1949, 173 L. Ed. 2d 868, for 12(b)(6) purposes, we find that Rollins' placement in Camp-J was "confinement for violations of less serious prison disciplinary rules." Wilkerson, 329 F.3d at 435. Accordingly, the Court's inquiry now shifts to whether Rollins has pleaded sufficient facts to demonstrate that his placement in Camp-J imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S. Ct. 2293.

In Wilkinson v. Austin, the Supreme Court found conditions at an Ohio "supermax" prison, when taken together, imposed an "atypical and significant hardship" so as to implicate a liberty interest under the due process clause. 545 U.S. 209, 223-24, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). The Court reached that finding when presented with the following conditions: (1) almost all human contact was prohibited, even to the point that the cells were constructed to

---

[7] In particular, they argue the classification was based upon the state court convictions Rollins received for battery on a correctional officer and introduction of contraband into a correctional facility; however this was not presented to the district court and will not be considered here. *See Part A, supra.*

7

prevent cell to cell communication; (2) opportunities for visitation were rare and in all events conducted only through glass walls; (3) cell lights remained on at all times; (4) placement in the facility was indefinite, and after an initial 30 day review, only reviewed annually; and (5) placement in the facility disqualified an otherwise eligible inmate for parole consideration. Id. at 214, 224, 125 S. Ct. 2384. The Court concluded "[w]hile any one of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224, 125 S. Ct. 2384.

In Wilkerson v. Stalder, this Court found that plaintiffs held in extended lockdown in Angola for approximately thirty years might have a due process claim. Wilkerson, 329 F.3d at 433, 436. The conditions of the inmates' confinement was described as

> the effective equivalent of solitary confinement. Prisoners in extended lockdown remain alone in a cell approximately 55 to 60 square feet in size of [sic] 23 hours each day. One hour each day, the prisoner may shower and walk along the tier on which his cell is located. Three times a week, weather permitting, the prisoner may use this hour to exercise alone in a fenced yard. Additional restrictions are placed on generally available inmate privileges including those pertaining to personal property, reading materials, access to legal resources, work and contact visitation.

Id. at 433. This court remanded the matter, in part, "to determine the appropriate baseline against which to measure the inmates' confinement in reviewing whether the inmates' confinement is 'atypical.'" Id. at 436.

Here, the district court initially concluded that Rollins' assignment to Camp-J was an initial classification and no due process right was implicated.

8

However, it also determined, in the alternative, that Rollins had failed to state a claim for a due process violation under the Sandin test.  We agree.

Rollins expresses great dissatisfaction with his confinement at Camp-J, but fails to allege what conditions there subject him to atypical and significant hardship in relation to the ordinary incidents of prison life.   Although Rollins describes Camp-J as a "maximum security  lockdown," his pleadings contain virtually no description of the conditions there other than a general assertion that "Plaintiff has been forced to live under harsh conditions such as verbal abuse, stress, and mental anguish.  Pain and suffering has become a part of the plaintiff's everyday struggle."  Unfortunately, this is hardly an atypical condition of prison life.[8]   While Rollins' amended complaint avers "his confinement in extended  lockdown for said duration, presents an atypical and significant hardship, and extraordinary circumstances," he fails to allege  facts to support this conclusion.

We agree with the district court that Rollins has failed to show his placement in Camp-J imposed an atypical or significant hardship beyond the ordinary incidents of prison life such that he was deprived of a cognizable liberty

---

[8] *See Harper v. Showers*, 174 F.3d 716, 717-19 (5th Cir. 1999) (no due process violation where inmate claimed he was placed in lockdown "next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires, resulting in his loss of sleep for days at a time;" was often "moved into filthy, sometimes feces-smeared, cells that formerly housed psychiatric patients;" and was deprived of "cleanliness, sleep, and peace of mind").

interest . See Fisher v. Wilson, 74 F. App'x 301, 2003 WL 21654031, at *1 (5th Cir. July 14, 2003) ("Fisher's complaint failed to state a claim because Fisher has not shown how placement in extended lockdown presented an atypical or significant hardship"); Bannister v. Deville, 211 F.3d 593, 2000 WL 329244, at *1 (5th Cir. Mar. 20, 2000) ("[Bannister] merely complains that he was transferred to an extended lockdown facility where he was not entitled to the privileges enjoyed by the general population. Bannister's placement in [Camp-J] did not constitute a deprivation of a constitutionally cognizable liberty interest that entitled him to procedural due process during the disciplinary proceedings"). The district court's dismissal of this case is affirmed.

## CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.