IN THE UNITED STATES DISTRICT COURT 
 NORTHERN DISTRICT OF TEXAS 
 DALLAS DIVISION 

SHARAN RENE BOUDREAU, § 
 § 
 Plaintiff, § 
 § 
v. § CIVIL ACTION NO. 3:19-CV-01623-E 
 § 
NOKIA OF AMERICA CORPORATION, § 
 § 
 Defendant. MEMORANDUM OP§I NION AND ORDER 
 Before the Court is the Motion to Dismiss Plaintiff’s Third Amended Complaint filed 
by Defendant Nokia of America Corporation (NAC) (Doc. 32). Having considered the 
motion, the parties’ briefing, and applicable law, the Court finds the motion should be 
granted in part and denied in part for thBeA fCoKllGoRwOiUnNgD r easons. 
 The following is taken from plaintiff Sharan Rene Boudreau’s Third Amended 
Original Complaint. 
 In August 2004, Alcatel USA Marketing Inc. hired Boudreau as corporate counsel. 
Alcatel USA Marketing Inc. subsequently became part of Alcatel-Lucent USA Inc., which 
“Nokia” acquired in January 2016. Alcatel-Lucent USA Inc. became NAC in January 1, 2018. 
 On April 18, 2017, Nassib Abou-Khalil, head of Customer Operations Legal & 
Compliance (CO L&C), told Boudreau that Genevieve Silveroli, head of CO L&C for the North 
American Region (NAM), was leaving. Abou-Khalil advised that Boudreau was a candidate 
to temporarily fill Silveroli’s role while he found a replacement. He also told Boudreau that 
she could apply for the permanent position, but advised that there would be a complete 
interview process and he would consider both internal an, d external candidates. Abou-
Khalil arranged a call between Boudreau and Ricky Corker head of Customer Operations 
for NAM, regarding the temporary position; Boudreau spoke with Corker, who did not have 

many questions and said he would defer to Abou-Khalil. Abou-Khalil ultimately selected 
Juan Pablo Guzman, head of CO L&C for Latin America, to serve in the temporary role. 
Guzman, a male, was younger than Boudreau. 
 Abou-Khalil subsequently again “encouraged” Boudreau to apply for the head of CO 
L&C for NAM position, and, on May 18, 2017, she applied. On June 9, 2017, she interviewed 
with Abou-Khalil and two HR representatives. Among other things, she described her 
previous management experience; “[e]veryone seemed satisfied and positive.” In July 
2017, Boudreau interviewed with Alex Mendoza, Riika Tieaho, and “JL,” again discussing, 

among other topics, her management experience. Boudreau also met with Corker in July, 
and their conversation “went very well.” Again, Boudreau discussed her experience as a 
commercial attorney and managing people and teams. 
 On August 22, 2017, Abou-Khalil told Boudreau that she had not been selected for 
the position. The requisition had not been closed, but they had another candidate for the 
position and, even if the candidate did not accept it, the position would not be offered to 
Boudreau. Abou-Khalil told Boudreau that she was a highly valued team member and he 
received very positive feedback about her, but she was not selected primarily due to her 

lack of management experience. Boudreau explained that, although it may not have come 
across clearly, she had significant management experience. Abou-Khalil indicated that 
Boudreau’s interview responses did not show the kind of experience he sought and 
“everyone” was concerned that Boudreau might not have enough management experience. 
His comments did not make sense to Boudreau, and she was suspicious that he was not 
being honest. However, and despite Abou-Khalil explicitly telling her otherwise, Boudreau 
thought “she might still get the promotion if she could find ways to show Abou-Khalil that 

she had the requisite management experience and skill.” 
 The candidate selected for the position did not accept it, and Abou-Khalil continued 
his search. Boudreau told Esa Niinimaki, her boss/line manager and Abou-Khalil’s “peer,” 
about Abou-Khalil’s comments, and Niinimaki responded, “that’s interesting, especially 
given how flat our organization is.” To Boudreau, this indicated Niinimaki knew Abou-
Khalil’s explanation for not promoting Boudreau was not credible. Niinimaki said h e knew 
Boudreau had a lot of management experience and would be great for the job. He also
suggested she could lead teams in some way to demonstrate her leadership abilities. His 

encouragement indicated to Boudreau that her “continued quest for the position was not 
futile.” 
 Abou-Khalil ultimately hired Jody Bishop as head of CO&L for NAM and, on January 
29, 2018, introduced Bishop to Boudreau. Boudreau observed that Bishop, a male, was 
approximately ten years younger than her and “looked very uncomfortable” when 
Boudreau asked him about his experience. After reviewing Bishop’s LinkedIn page, it was 
obvious to Boudreau that she was far more qualified than Bishop for the position and her 
lack of management experience was a pretext for age and sex discrimination. 

 On April 13, 2018, Boudreau received her annual review from Niinimaki. He 
implied she was performing well, but gave her a “3” rating instead of a “4.” He told her she 
was a “true team player” and had “done a great job supporting” Bishop. But, Niinimaki also 
referred to a comment by Abou-Khalil questioning Boudreau’s support for Bishop because 
she was “asking a lot of questions about [his] qualifications and experience and had been 
going onto LinkedIn every day.” Niinimaki indicated he intended to see that Abou-Khalil 
“doesn’t go around telling other people things like this.” Her conversation with Niinimaki 

caused Boudreau to believe Abou-Khalil had spoken to others about her performance, her 
role as an equal to Bishop was being diminished, and she was likely to be demoted. 
Further, the conversation, coupled with Bishop’s hiring, was “crushing” to Boudreau. She 
worked shorter hours, stayed home, and told people she was sick because she could not 
focus or move. She sought help from doctors. 
 On April 16, 2018, Boudreau spoke with Julie Liptak, VP for HR Americas. They 
discussed Boudreau’s non-selection for the promotion, Abou-Khalil’s comments, and that 
Abou-Khalil “had made it so uncomfortable working at [NAC] that [Boudreau] was 

incapacitated, that she could not function and was terrified of what was coming next.” 
Liptak told Boudreau she would investigate. 
 On April 20, 2018, Liptak reported that one of the HR representatives who had 
interviewed Boudreau told Liptak that Corker had agreed the candidate who was offered 
the position in August 2017 was the better candidate. Based on that information and her 
discussion with the HR representative, Liptak did not feel any action was necessary. Liptak 
advised that Boudreau could consider taking short term disability if she qualified. On April 
23, 2018, Boudreau began short term disability leave. 

 On August 24, 2018 Boudreau filed a charge of sex discrimination, age 
discrimination, and retaliation with the Equal Employment Opportunities Commission 
(EEOC) and the Texas Workforce Commission (TWC). 
 Boudreau remained on short term disability. On October 28, 2018, NAC terminated 
Boudreau, and, by letter, advised that her employment was terminated because she would 
“not be able to return to work by the expiration of [her] STD benefits.” 

 On July 11, 2019, Boudreau filed an Amended Charge of Discrimination alleging her 
termination was sex and age discrimination and retaliation for having filed her August 24, 
2018 discrimination charge. 
 Boudreau filed this action on July 5, 2019. In her Third Amended Complaint, she 
asserts the following causes of action: (1) age discrimination in violation of the Age 
Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights 
Act (TCHRA); (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 
(Title VII) and the TCHRA; (3) retaliation in violation of the ADEA, Title VII, and the TCHRA; 

(4) gender-based pay discrimination in violation of Title VII and the TCHRA; and (5) 
gender-based pay discrimination in violation of the Equal Pay Act (EPA). NAC moves to 
 1 
dismiss each of the claims against it. LEGAL STANDARD 
 Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain “a short 
and plain statement of the claim showing that the pleader is entitled to relief.” Fed. R. Civ. 

1 P N. A8 C(a p) r( e2 v) io. u R slu y l fe il 1 ed2 a( b m) o( t6 io) n a tu o t dh iso mri isz se Bs oa u c dro eu aur ’t s t Fo i rd sti s Am mi es ns d a ed p Cla oi mn pt li af if n’s t (c Do om c.p 8l )a . i n Tt h ef ro er a f“ tf ea r,i l Bu or ue d rt eo a 
 u 
filed motions for leave to file a Second and Third Amended Complaint (Docs. 14 & 26). The Court granted 
Boudreau leave to file the Third Amended Complaint and denied as moot the other outstanding motions (Doc. 30). 
In her response to the pending motion to dismiss, she asserts the Court should deny the motion under the law of the 
case doctrine. Specifically, Boudreau asserts that the Court, by previously granting her motion for leave to file the 
Third Amended Complaint, rejected the Rule 12(b)(6) arguments asserted by NAC in its previous motion to dismiss. 
“As most commonly defined, the doctrine of the law of the case posits that when a court decides upon a rule of law, 
that decision should continue to govern the same issues in subsequent stages in the same case.” See Christianson v. 
Colt Indus. Oper. Corp., 486 U.S. 800, 815–16 (1988) (internal quotation marks and citation omitted); Clifford v. 
Gibbs, 298 F.3d 328, 331 (5th Cir. 2002) (the doctrine “applies only to issues actually decided”). The Court denied 
as moot NAC’s previous motion to dismiss; it did not address the merits. Because the Court in no way decided the 
law applicable to this case, the law of the case doctrine does not apply. 
 Id. 
state a claim upon which relief can be granted.” 12(b)(6). In considering a Rule 
12(b)(6) motion to dismiss, “[t]he court accepts aInll rwe eKlal-tprlienaad Ceadn faalc Btsr eaasc htreus eL, itviige.wing 
them in the light most favorable to the plaintiff.” , 495 

F.3d 191, 205 (5th Cir. 2007) (citations omitted). “The court’s review is limited to the 
complaint, any documents attached to the complaint , and any documents attached toL othnee 
mStaorti oFnu ntdo Vd i(sUm.Sis.)s, tLh.Pa.t va. rBea crecnlatryas l Btaon tkh eP LcClaim and referenced by the complaint.” 
 , 594 F.3d 383, 387 (5th Cir. 2010) (citation 
omitted). 
 To survive a motion to dismissB, ae lpl lAatinl. tCifof rmp.u vs.t T pwleoamdb “leynough facts to state a claim 
to relief that is plausible on its face.” , 550 U.S. 544, 570 (2007). 
“Threadbare recitals of the elements Aoshf crao ftc va.u Isqeb aolf action, supported by mere 

conclusory statements, do not suffice.” , 556 U.S. 662, 678 (2009). “The 
plausibility stIadn. dard . . . asks for more than a sheer possibility that a defendant has acted 
unlawfully.” Thus, a claim “is implausible on its face when ‘the well-pleadedH afarcotlsd dHo. 
nHoutg gpienrsm Riet atlhtye, cInocu.r vt. tFoN iCn, fIenrc .more than the mere possibility of misconduIcqt.b’”a l
 see also Inclusive Comm, 6u3n4it iFe.s3 dP r7o8je7c, t7, 9In6c .( 5v.t hL iCnicro. l2n0 P1r1o)p (. qCuoo. ting , 556 U.S. 
at 679); , 920 F.3d 890, 899 
(5th Cir. 2019). ANALYSIS 
1. Exhaustion of Failure to Promote Claims 

 NAC first asserts that Boudreau’s failure to promote discrimination claims under the 
ADEA, Title VII, and the TCHRA must be dismissed because she failed to timely file a related 
charge of discrimination with the EEOC or TWC. Before filing a civil action for 
discrimination under the ADEA and Title VII, a plaintiff must exhaust administrative 
remedies, which include filing a charJguel iaonf dvi.s Ccritiym oinf aHtioouns twonith the EEOC within 300 days 
after anT aayllleogre vd. Uvnioitleadti oPna roccecl uSrerrevds.. , 314 F.3d 721, 726 (5th Cir. 

2002); , 554 F.3d 510, 521 (5th Cir. 2008); 29 U.S.C. § 626(d); 42 
U.S.C. § 2000e–5(e)(1). Similarly, the TCHRA requires a plaintiff to exhaust her 
administrative remedies before filing a civil action by filing a complaint with Athdea mTWs vC. 
wDaitihminle r1C8h0ry dslaeyr sS earfvtes.r NtAh eL LaClleged unlawfully employment practice occurred. 
 , 252 F. App’x 681, 683 (5th Cir. 2007); TEX. LAB. CODE ANN. § 

21.202(a). 
 The period for filing a charge begins to run once the plaintiff knows or should Abejaeyni 
av.w Waraelg orfe tehne C doi.scriminatory act, not when she first perceives aC dhirsicsrtiompihneart ov.r yM moboitl iOveil. C orp.
 , 562 F. App’x 243, 246 (5ths eCeir a. l2s0o1 P4a)c (hceiction gv . Rice, , 
950 F.2d 1209, 1217 n.2 (5th Cir. 1992)); 966 F.2d 904, 906 (5th 
Cir. 1992) (“To allow plaintiffs to raise employment discrimination claims whenever they 
begin to suspect that their employers had illicit motives would effectively eviscerate the 
time limits prescribed for filing such complaints.”). Failure to promote, like termination 
and demotion, is a diSsecree Ntea te’vl eRn.Rt .t hPaats ssehnoguelrd Cpourtp .a nv. eMmoprlgoaynee on notice that a cause of 
action has accrued. , 536 U.S. 101, 114 (2002) 
(“Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire 

are easy to identify,” and each of these discrimiFnraatnokr yv .o Xr erreotxa lCiaotropr.y, incidents is “a separate 
actionable ‘Aulnlilsaownf vu.l Ceimtyp olfo Fyomret nWt oprrtahc, tTiceex..’”); 347 F.3d 130, 136 (5th 
Cir. 2003); , 60 F. Supp.2d 589, 597 (N.D. Tex. 1999) (“Time 
starts running when a plaintiff knows of the act—here, denial of promotion—not when he 
perceives a discriminatory motive caused the act.”). 
 Here, Boudreau was told that she did not, and would not, receive the promotion she 

sought on August 22, 2017. Although she may have believed her “continued quest for the 
position was not futile” after her discussions with Abou-Khalil and Niinimaki, the petition 
does not allege any facts to show Abou-Khalil’s statement was untrue and that Boudreau 
remained under consideration for the position. 
 Filing aT achylaorrg ve., Bhooowkes vAe rM, i“liliso na , pInrec.condition to filing suit” and not a jurisdictioDnaaol 
pv.r eAruecqhuains iHtey. p ermarket , 296 F.3d 376, 37s9e e( 5Gtohr mCiar.n 2 v0. 0V2e)r (izqouno tWinigre less 
Tex., L.L.C. , 96 F.3d 787, 789 (5th Cir. 1996)); 
 , 753 F.3d 165, 170 (5th Cir. 2014). Therefore, it is “a requiremTaenylto trhat, like a 

statute of limitatiZoipness, ivs . sTurbajnecs tW too wrlda iAveirrl,i nesetso, pInpce.l, and equitable tolling.” Co,k 5e5 v4. FG.e3nd. 
aAtd j5u2s1tm (eqnuto Btiunrge au, Inc. , 455 U.S. 385, 393 (1982)); 
 , 640 F.2d 584, 595 (5th Cir. 1981) (en banc). The Fifth Circuit has 
described three possible bases for equitable tolling: (1) the pendency of a suit between the 
same parties in the wrong forum; (2) plaintiff’s unawareness of the facts giving rise to the 
claim because of the defendant’s intentional concealmeGnrta nogf etrh evm. A; aarnodn ’s(, 3I)n ct.he EEOC’s 
misleading the plaintiff abMouatn nthineg n va.t uCrhee vorfo nh eCrh reimgh. tCso. . , LLC , 636 F.3d 
708, 712 (5th Cir. 2011); , 332 F.3d 874, 880 (5th Cir. 

2003). 
 Boudreau asserts she pleads fact to show equitable tolling and, specifically, that she 
was unaware of facts giving rise to her claim because NAC intentionally concealed them. A 
plaintiff’s lack of awareness of the facts of a claim supports equitable tolling only when “the 
employer’s affirmativMea nacntisn gm, LisLleCad the employee and induce him not to act within the 
limitations period.” , 332 F.3d at 880. A plaintiff need not prove intentional 
misconduct by the employer, but must demonstrate “the defendant’s conduct, innoTceynletr o vr. 

nUonti,o rne Oasilo Cnoa.b olyf Cinald.uced the plaintiff not to file suit within the lMimciGtaretigoonrs v p. eLroiuoidsi.”a n a State 
Univ. Bd. of Supervis,o 3r0s4 F.3d 379, 391 (5th Cir. 2002) (quoting 
 , 3 F.3d 850, 865–66 (5th Cir. 1993)). 
 At this stage, the Court must accept as true all of Boudreau’s factual allegations. 
Boudreau alleges facts to raise an inference that affirmative conduct by NAC employees 
reasonably misled her about the facts supporting her claim. Specifically, she was told that 
she did not receive the promotion primarily due to her lack of management experience. 
Only when Bishop, a younger male with less management experience, received the 

promotioSne, ew, ea.sg .,B iRshhoodpe sm va.d Geu aibwearsroen o Of itlh Te ofoalcst sD inve.cessary to support a discrimination 
charge. , 927 F.2d 876, 881 (5th Cir. 1991) 
(equitable estoppel applied and limitations on ADEA claim did not commence until 
employee learned he had been replaced by younger employee when employer told him he 
was being dCiosckhearged as part of required work force reduction and would be considered for 
re-hiring); , 640 F.2d at 595 (employer’s misrepresentation that employee would be 
reinstated induced foreseeable forbearance in filing ADEA claim). 
 Accordingly, the Court finds that Boudreau has sufficiently alleged facts to show the 

time for filing a charge related to her failure to promote claims was equitably tolled until 
January 29, 2018, when she learned Bishop was selected for the position she sought. She 
filed a charge of age and gender discrimination with the EEOC and TWC on August 24, 
2018, within 300 days. Because her charge was timely filed with respect to her ADEA and 
Title VII claims for failure to promote, NAC’s motion to dismiss those claims must be 
denied. However, because Boudreau did not file her charge within 180 days after she 
learned BishSoeep Awdaasm sselected for the position, her TCCHRA failure to promote claim must be 

d2.i smWisasgeed D. iscriminatio, 2n5 C2la Fim. Asp p’x at 683; TEX. LABOR CODE ANN. § 21.202(a). 

 NAC contends Boudreau’s pay discrimination claims under the EPA, Title VII, and 
the TCHRA fail because she has not alleged facts to show any similarly situated male 
employees were paid more than she was paid. Specifically, her allegations, which include a 
list of males in the NAC legal department who “upon information and belief” were paid 
more than Boudreau and a May 2019 statement addressing gender pay disparities by 
Rajeev Suri, Chief Executive Officer of NAC’s parent company, are not sufficient to state a 

claim under the applicable statutes. 
 Boudreau’s EPA and Title VII discrimination claims both require a showing that 
male employees who had the same work responsibilities received better pay. Under the 
EPA, a plaintiff must show that “(1) her employer is subject to the Equal Pay Act; (2) she 
performed work in a position requiring equal skill, effort, and responsibility under similar 
working conditions; and (3) she wBasa dpgaeirdo wle svs. RtEhJa Pnr othpee rteimesp, lIonyce. e of the opposite sex 
providing the basis of cCohmanpcaer ivs.o Rni.c”e Univ. , 974 F.3d 6se1e0, 616–17 
(5th Cir. 2020) (citing , 984 F.2d 151, 153 (5th Cir. 1993)); 29 U.S.C. 
 2 
§ 206(d)(1). Under Title VII, the plaintiff must show “she is a member of a protected class 
who ‘was paid Bleasdsg etrhoawn a non-member for workT aryeloqruiring substantially the same 
responsibility.’” , 9 74 F.3d at 617 (quoting , 554 F.3d at 522). That is, she 
2 The standard is the same for TCHRA wage discrimination claims. See Lindsley v. TRT Holdings, 3:17-CV-
029420-X, 2019 WL 6467256, at *5 (N.D. Tex. Dec. 2, 2019). 
must show “her circumstances were nearly Iiddentical to those of a better-paid employee 
who is not a member of her protected class.” . at 185. 
 Here, Boudreau’s very general allegations provide no basis to compare the skill, 

effort, and responsibility demanded by her position and the positions of the males listed in 
the Third Amended Complaint or that their circumstances were nearly identical. She 
simply alleges, without facts in support, that she and other females in the NAC legal 
department (1) “performed work that required equal skill, effort and responsibility under 
similar working conditions” as male employees and (2) were members of a protected class 
that were paid less than the males for “work requiring substantially the same 
responsibility.” Suri’s statement, which indicates only that NAC’s parent corporation was 
going to address a “small but statistically significant ‘unexplained pay gap’” in the company 

and the majority of the beneficiaries would be women, also does not provide any specific 
factual support for her EPA, Title VII, and TCHRA claims for wage discrimination. 
Accordingly, the CourSt eefi,n ed.gs. tEhsep ianlolezgaa vt.i oSnasn Bareen itino sCuoffniscoiel.n Itn dtoep s. tSacthe. Da ispt.lausible wage 
discrimination claim. , , 753 F. App’x 
216, 220 (5th Cir. 2018) (T“oafyfilcoerr vs.’ Tceoxmaps lSa.i nUtn idvo.es not explain how their job duties were 
the same as [plaintiff’s]”); , No. H-19-1225, 2019 WL 4394696, at *3 
(S.D. Tex. Sept. 13, 2019) (very general allegations provide no basis to compare the skill, 
effort, and responsibility demanded by plaintiff’s and the male employee’s position or 

support inference that male employee was similarly situated to plainCtoifmf pina rea rCeoa nonfo rjo vb. 
pOeffrifcoer omf aAntct’ey aGnedn . ionfs Tueffxi.c,ient to state plausible equal pay act claim); 
 No. A-14-CV-961 LY, 2015 WL 1004304, at *3 (W.D. Tex. Mar. 5, 
2015) (plaintiff “alleged specific facts regarding her job duties and the job duties of her 
m3. alRe ectoamliaptaorrayt oHross tainled W thoursk hEansv airlolengmeden at pCrlaimimas f acie claim of wage discrimination”). 

 NAC contends Boudreau’s retaliatory hostile work environment claims under the 
ADEA, Title VII, and the TCHRA fail as a matter of law because she has not alleged sufficient 
facts to show that she was subjected to a hostile work environment and her inquiries into 
Bishop’s qualificatpiornims ad ofa ncoiet qualify as a protected activity. 
 To state a case of retaliation under the ADEA, Title VII, and TCHRA, a 
plaintiff must show: (1) she engaged in protected activity; (2) an adverse employment 
action ocGcouurrdeeda;u a nv.d N (3at)’ la Ocailuwsealll lVinakr ceox,i sLt.sP b. etween the protected activity and the adverse 
action. Feist v. Louisiana , 793 F.3d 470, 478 (5th Cir. 2015) (Bciltaactkio vn. 

oPmani tAtemd.) L (aAbDs.E, LA.)L;. C. , 730 F.3d 450, 454 (5th Cir. 2013) (Title VII); 
 , 646 F.3d 254, 259 (5th Cir. 2011) (TCHRA). Although the Fifth Circuit 
has not yet recognized a retaliatory hostile work environment cause of action, other 
cMirocnutigtos mhearvye-S manitdh vF. iGfteho rCgiercuit courts have assumed such a claimZa vcaalan vb. eC abrrroolultgohnt-. 
Farmers Branch Indep. Sch. Di,s 8t.10 F. App’x 252, 258 (5th Cir. 2020); 
 , No. 3:16-CV-1034-D, 2017 WL 274133, at *2 (N.D. Tex. Jan. 
20, 2017). For claims of a retaliatory hostile environment, district courts in this circuit 
follow a modified approach: “the first element would require proof that the plaintiff had 

engaged in a protected activity, and the third element would require deZmaovnaslatration of a 
causal connection between the harassment and the protected activity.” , 2017 WL 
274133, at *3. 
 Here, the law on hostile work environment claims in the context of discrimination 
 Montgomery-Smith 
and sexual harassment is instructive. , 810 F. App’x at 258. Under Title 
VII, there is a violation when “the workplace is permeated with ‘discriminatory 
intimidation, ridicule, and insult’ that is ‘sufficiently severe or pervasive to alter tIhde 

conditionEs. Eo.fO t.Ch.e v .v WictCim&M’s Eenmtperlos.yment and create an abusive working environment.’” . 
(quoting , 496 F.3d 393, 399 (5th Cir. 2007). “For harassment to be 
sufficiently severe or pervasive to alter the conditions of the victim’s empIdloyment, the 
conduct complained of must be both objectively and subjectively offensive.” . at 258–59. 
“To determine whether the victim’s work environment was objectively offensive, courts 
consider the totality of the circumstances, including (1) the frequency of the discriminatory 
conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely 
an offensive uIdtterance; and (4) whether it interferes with an employee’s work 

performance. . at 259. The Supreme Court has “made it clear that conduIcdt must be 
Fexatrraegmheer t vo. aCmityo oufn Bt otoca a R cahtaonnge in the terms and conditions of employment.” . (quoting 
 , 524 U.S. 775, 788 (1998)). 
 Boudreau asserts NAC’s telling her she did not receive the promotion, “subjecting 
her to criticism,” giving her a “3” instead of a “4” on her evaluation, and “urging” her to take 
medical leave in response to her complaint, constituted actionable harassment (Doc. 38, p. 
20). These incidents do not amount to the type of “extreme” conduct required by the 
Supreme Court to make out a claim for a hostile work environment. Denial of a promotion 

is “not o Mffeonnstgivoem oerr yh-aSrmasitshing in the way necessary to support a hostile work environment 
claim.” , 810 F. App’x at 259. Further, criticism of an employCeree’ds ewuro rvk. 
pLoeurfiosiramnaan Tcher oduogehs Onfofitc em oefe At ttth’ye Gsetna.ndard required for a harassment claim. 
 , 860 F.3d 785, 796 (5th Cir. 2017). Considering the 
totality of the circumstances, the conduct alleged, alone and in combination, is simply not 
severe or pervasive enough to support a hostile work environment claim. Accordingly, the 
Court finds her claims for a retaliatory hostile work environment must be dismissed. 

 Further, the Court finds that Boudreau has not alleged facts to show she engaged in 
any protected activity prior to lodging her age and sex discrimination complaints with 
Liptak. An individual engages in a protected activity if she: (1) opposes an employment 
practice made unlawful, or (2) makes aB ycehrasr gve. T, thees tDifaiellsa,s a Mssoisrntsi,n ogr N peawrtsi,c Iinpca.tes in a related 
investigation, proceeding, or hearing. , 209 F.3d 419, 
427–28 (5th Cir. 2000). Boudreau’s personal investigation of Bishop’s qualifications, 
without more, cannot form the basis of a retaliation claim. She alleges Abou-Khalil’s 
“question[ing] her character” indicates he perceived her questions about Bishop’s 

qualifications as a complaint that she had been denied the promotion “due to her sex and 
age.” (Doc. 31, p. 24-25). However, the Fifth Circuit has not adopted a perception theory of 
retaliation, and BoudMrecaKui’nsn “ebye vli.e Bf”o tlihvaatr A Mbeodu.- CKthra.lil had such a perception is insufficient to 
support her claims. , 341 F. App’x 80, 83 (5th Cir. 2009). For 
this reason, Boudreau also fails to sufficiently allege any claim for retaliatory hostile work 
environment based on conduct that occurred prior to her April 16, 2018 meeting with 
L4.i ptDaiks.c r imination and Retaliation Claims Related to Boudreau’s Termination 

 NAC also contends Boudreau’s discrimination and retaliation claims based on her 
termination fail as a matter of law because she admits that NAC’s legitimate, non-
discriminatory and non-retaliatory reason for her administrative termination was true. 
 The ADEA forbids “an employer ... to discharge any individual … because of such 
 Robertson v. Alltel Info. Servs. 
individual's age.” 29 U.S.C. § 623(a)(1); , 373 F.3d 647, 651 
(5th Cir. 2004). Under Title VII, it is “an unlawful employment practice for an employer ... 
to discharge ... any individual … because of such individual's race ... sex or national origin.” 

42 U.S.C. § 2000e-2(a)(1). The TCHRA also prohibits employer discrimination directed at 
the “terms, conditions, or privileges of employment” because of race, color, disability, 
 3 
religion, sex, national origin or age. TEX. LAB. CODE ANN. § 21.051(1). 
 Claims of discriminSeaeti oMnc Caonyd vr. eCtiatlyi aotfi oSnh rmevaeyp obret established by either direct or 
circumstantial evidence. , 492 F.3d 551, 556–57 (5th Cir. 
2M0c0D7o)n. n Felolr D coiurcgulams sCtaonrpti. avl. eGvriedeennce cases, courts followI dtheM biullerdr evn. -Rsahyiftthienogn f rCaom. ework in 
 , 411 U.S. 792 (1973). .; , 716 F.3d 
138, 144 (5th Cir. 2013). The plaintiff must first establish a prima facie case. For 
discrimination, the plaintiff must show that she: (1) is a member of a protected group; (2) 
was qualified for the position at issue; (3) was discharged or suffered some adverse 
employment action by the employer; and (4) was replaced by someone outside his 
protected group or was treateMd clCeossy favorably than othSemri tshi mv.i lCairtlyy osfi tJuaactkesdo nemployees 
outside the protected grouapf.”f’ d , 492 F.3d at 556; , 351 F.3d 
183, 196 (5th Cir. 2013), , 544 U.S. 228 (2005). For retaliation, the plaintiff must 
establish that: (1) she participated in a protected activity; (2) her employer took an adverse 
employment action against her; and (3) a cauMscaCl ocyonnection exists between the protected 

activity and the adverse employment action. , 492 F.3d at 557. If the plaintiff makes 
a prima facie showing, the burden then shifts to the employer to articulate a legitimate, 

3 “[T]he law governing claims under the TCHRA and Title VII is identical,” Shackelford v. Deloitte & Touche, 
LLP, 190 F.3d 398, 403 n.2 (5th Cir. 1999); therefore, the Court will interpret and consider Boudreau’s federal and 
state claims together. 
 Id 
nondiscriminatory or nonretaliatory reason for its employment action. . If the employer 
meets its burden of production, the plaintiff then bears the ultimate burden of proving that 
the employer’s proffered reason is Indot true but instead is a pretext for the real 

discriminatory or retaliatory purpose. . 
 NAC asserts that Boudreau admits that its stated reason for terminating her was 
“true,” but she responds, and the Court agrees, that the Third Amended Petition does not 
admit to the truth of the reason given for the termination. Instead, she alleges that she was 
terminated “because of her sex and age and in retaliation for protected activity.” To be 
sure, the facts alleged in support of her discriminatory and retaliatory termination claims 
are tenuous. But NAC has not specifically challenged them in its motion toS edei sRmaijs vs.. 
FLouurtihsiearn, aa tS ttahtee Uplneiavd. ing stage, Boudreau need not make her pSrwimiear kfiaecwieic zc avs. eS. o rema N.A.

 , 714 F.3d 322, 331 (5th Cir. 2013) (citing , 
534 U.S. 506, 510–12 (2002)). Assuming all factual allegations as true and drawing all 
reasonable inferences in favor of Boudreau as it must, the Court finds she pleads enough 
facts to state claims for discrimination anCdO NrCeLtaUlSiIaOtNio n related to her termination. 

 For the reasonsG RaAboNvTeE, DN AinC ’ps arMtotionD tEoN IDEiDsm inis sp aPrltaintiff’s Third Amended 
Complaint (Doc. 32) is and . Because Boudreau did 
not sufficiently allege a plausible claim for wage discrimination under the EPA, Title VII, 

or the TCHRA or a plausible claim for retaliatory hostGilRe AwNoTrEkD environment under the 
ADEA, Title VII, or tDheIS TMCIHSSREAD, the motion to dismiss is as to those claims, and 
those claims are . Because Boudreau failed to exhaust administrative 
 GRANTED DISMISSED with prejudice 
dismiss also is DENI EaDs to that claim, and it is . The 
motion to dismiss is as to Boudreau’s failure to promote discrimination claims 
under the ADEA and Title VII and termination discrimination and retaliation claims 

under the ADEA, Title VII, and the TCHRA. 
 Despite having amended her complaint three times already, Boudreau requests 
that she be granted leave to cure any defects. If she can, in good faith, replead facts to 
support her wage discrimination claims or her retaliatoryS eheo stile work environment 
claims, she may do so on or before January 15, 2021. FED. R. CIV. P. 15(a)(2). 
Otherwise, the disposition of those claims will be converted into dismissal with 
prejudice. DENIED 

 NA CO’Rs DreEqRuEesDt for atto rneys’ fees and costs is . 
 SO ; signedDecember 18, 2020. 

 _______________________________________ 
 ADA BROWN 
 UNITED STATES DISTRICT JUDGE